**COASTAL INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 92–185C & 92–594C.**

United States Court of Federal Claims.

March 8, 1993.

Alan M. Grayson, Falls Church, VA, for plaintiff.

Donna C. Maizel, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Leslie A. Chen, Defense Personnel Support Center, of counsel.

## OPINION

MARGOLIS, Judge.

This case is before the court on defendant's motions to dismiss for lack of jurisdiction. Plaintiff appeals two alleged final decisions of the contracting officer denying claims for equitable adjustment of plaintiff's contracts to manufacture and deliver denim trousers. Defendant asserts that this court lacks subject matter jurisdiction to entertain plaintiff's complaints because plaintiff failed to submit "claims" to the contracting officer within the meaning of the Contract Disputes Act. After careful consideration of the record, and after hearing oral argument, this court denies defendant's motion to dismiss Case No. 92–185C and grants defendant's motion to dismiss Case No. 92–594C.

## FACTS

Defendant United States, through the Defense Personnel Support Center, awarded plaintiff Coastal Industries, Inc. ("Coastal") five contracts for manufacturing men's and women's flame-retardant denim trousers according to government specifications on the following dates:

| | |
|---|---|
| DLA100–86–C–0870 | September 24, 1986 |
| DLA100–86–C–0890 | September 26, 1986 |
| DLA100–86–C–0891 | September 26, 1986 |
| DLA100–88–C–0418 | March 7, 1988 |
| DLA100–88–C–0419 | March 7, 1988 |

All of the contracts contained or referenced the standard Federal Acquisition Regulation ("FAR") disputes clause, 48 C.F.R. § 33.2.

Coastal encountered various problems during its performance of the five contracts, allegedly because the government's testing facilities delayed cloth testing and tested the cloth improperly. From November 1986 through December 1988, Coastal claims it attempted to resolve the government testing problems. During November 1988, the contracting officer and Coastal negotiated waivers that allowed Coastal to use allegedly nonconforming cloth for small reductions in the corresponding contract price. Coastal also sought delays in the delivery schedule.

*January 13, 1989 Submittal*

On January 13, 1989, Coastal submitted a purported claim to the contracting officer ("the original claim" or "January 13 submittal") in the amount of $1,024,437 for delay and disruption under the contracts, pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601–613 (1988). The January 13 submittal consisted of five packages of materials ("small packages"), each held together by a rubber band. Each small package contained the following materials presenting the claim for a different contract:

(a) A claim certification, using the language prescribed by 41 U.S.C. § 605(c)(1) and signed by Coastal's president.

(b) Claim back-up materials entitled "Coastal Industries, Inc. Claims Calculation Methodology" which included a sum certain designated as the "Total Claim."

(c) A completed and signed Department of Defense Contract Pricing Proposal (DD Form 633) demanding a "Total" equal to the amount of the "Total Claim" (designated on this form as "Total Cost") plus a fee/profit of ten percent.

Plaintiff alleges that the five small packages were bound by a larger rubber band and included a cover letter addressed to the contracting officer that referenced the enclosed claim. Neither party has produced the cover letter, and the contracting officer does not recall receiving it.

On April 6, 1989, the contracting officer, in compliance with 48 C.F.R. 33.211(c)(2), notified Coastal that a decision on Coastal's claims could not be made within the 60–day statutory time frame "due to the amount of research required to validate or invalidate claims of Government caused delay and the necessity to conduct an audit of the proposed settlement costs[.]" Pl.'s Opp'n [No. 92–185C] Ex. 2.

*June 11, 1990 Submittal*

More than a year later, Coastal submitted a June 11, 1990 letter to the contracting officer ("June 11 submittal") which stated:

Per our telephone conversation you have asked that we provide you a summary of the reasons that led to the additional costs we incurred on the following contracts.

[A list of the five contract numbers.]

We have previously submitted claims to you for these costs. It is our understanding that you will use the information we are providing to help speed up the process of evaluating our claims and paying the sums owed. These claims were originally submitted to you on January 12, 1989 [sic] so you can understand our desire to have this situation resolved as soon as possible. The costs incurred were high and significantly affected our financial position. By this letter we seek only to provide you with additional documentation concerning the reasons for our claims. The "quantum" of the claims will, [Coastal is] sure, be analyzed by the DCAA and we stand ready to provide all documentation necessary to prove the methodology and accuracy of our computations.

During the period November 1986 through December 1988, we experienced significant additional costs on the above referenced contracts due to problems with erroneous cloth specifications and errors in testing by government officials. As a result of these problems[,] much of the cloth provided by our vendors was ruled as not being acceptable for inclusion in government uniforms. Without a steady supply of cloth it is of course impossible to produce garments according to schedule and within the cost levels estimated for the contract.

Pl.'s Opp'n [No. 92–185C] Ex. 3 at 1. The letter went on to describe specific problem tests on the subject contracts, and concluded by asking the contracting officer to "expedite evaluation and payment of the monies owed to [Coastal]." *Id.* at 3. The letter referenced attached documents that apparently included various contract correspondence, test reports, and a copy of the original claim.

*First Action of the Contracting Officer*

On February 22, 1991, more than two years after Coastal submitted the original claim, the contracting officer wrote to the administrative contracting officer, stating:

[Coastal] had submitted claims on all of these contracts asserting Government liability for payment to Coastal in the total amount of $1,024,437. The claims were based on erroneous specifications and errors in testing by the Government. After an exhaustive review, it has been determined that the cloth specifications were not erroneous nor were there errors in the verification testing performed by the Government. The claims have no merit.

Pl.'s Opp'n [No. 92–185C] Ex. 4. In addition, he referenced a contract modification that forfeited claims on one of the contracts and reduced the balance of the claims by $209,534.[1]

In his letter, the contracting officer expressly delegated his authority to issue the final determination to the administrative contracting officer. Accordingly, on March 20, 1991, the administrative contracting officer, repeating the contracting officer's rationale, denied Coastal's original claim in its entirety. That letter stated that it was a final decision of the contracting officer which could be appealed to either the Board of Contract Appeals or this court.

*May 14, 1991 Submittal*

By letter dated May 14, 1991, Coastal resubmitted its claims to the contracting officer. The text of Coastal's letter stated in its entirety:

After the response [Coastal] received from the ACO office concerning the claims on [the contracts], [Coastal is] resubmitting all claims except the claim on [contract 419]. If the claims are denied because of testing [Coastal] need[s] specific information concerning the testing. [Coastal] disagree[s] that the testing was done correctly since it is known that Test 5557 [hand-corrected to read 5556] only elaborates on 20 washings and this test

had 25 washings which part of the time the Lab took the washing powder out of the last 3 washing cycles and part of the time they left it in for all 25 washings. This is only one specific in the basis for incorrect Lab testing of these contracts. All documentation of test and retest are included with the claims.

Pl.'s Opp'n [No. 92–594C] Ex. 6.

Receiving no response from the contracting officer, Coastal wrote a second letter dated August 13, 1991 stating, in part, that Coastal:

resubmitted claims on the above referenced contracts on 16 May 1991 and [they] were received by you on 17 May 1991. This was done since [Coastal] was not given any specific information concerning the testing but was only told the claims were denied, and [Coastal] disagree[s] that the testing was done correctly.

Pl.'s Opp'n [No. 92–594C] Ex. 7. The letter went on to reference the requirements of FAR 33.211(c) and stated: "Please advise [Coastal] of your decision immediately." *Id.*

*Second Action of the Contracting Officer*

On September 3, 1991, the contracting officer responded to Coastal's August 13, 1991 letter, stating:

I have not received any *resubmitted* claims from your firm as stated in your letter. If you are referring to the your [sic] original claims submitted under these contracts, please refer to the attached final decision of the Contracting Officer dated 20 March 1991. Additionally, I invite your attention to paragraph 3 of that letter wherein your appeal rights are delineated. I caution you to carefully examine the proper procedures for pursuit of an appeal in accordance with FAR 33.211(a).

Pl.'s Opp'n [No. 92–594C] Ex. 8 (emphasis in original).

---

1. Subsequent to its submission of the original claim, Coastal signed a modification to one of the five contracts, DLA100–88–C–0419 ("contract 419"), on June 8, 1989. This modification featured a waiver of all existing claims related to contract 419.

## DISCUSSION

In its motions to dismiss, the government contends that this court lacks subject matter jurisdiction to entertain Coastal's complaint because the January 13, 1989 submittal failed to satisfy the CDA's requirements. Defendant also contends that Coastal's June 11, 1990 submittal was not a claim and did not cure the flaws in the earlier filing. Finally, defendant contends that Coastal's May 14, 1991 letter did not constitute a submission to the contracting officer for final decision.

*Existence of Dispute*

█ Defendant maintains that Coastal does not satisfy the threshold requirement for a valid claim: the existence of a dispute between the contractor and the contracting officer over the asserted claim. *See Dawco Constr., Inc. v. United States,* 930 F.2d 872, 878 (Fed.Cir.1991).[2]

The crux of defendant's argument is that no dispute existed because the contracting officer was unaware that Coastal sought an equitable increase in the contract price for allegedly defective government testing requirements. Accordingly, defendant views the January 13 submittal as a unilateral cost proposal seeking to negotiate an upward adjustment in the contract price. Three factors militate against this conclusion.

First, Coastal's January 13 submittal is distinguishable from *Dawco's* "unilateral cost proposal" on its facts. Unlike *Dawco,* the January 13 submittal was not prepared at the government's request. *See id.* at 874. In contrast, Coastal asserts that Coastal prepared the claims on its own volition after it had attempted for two years to obtain an equitable adjustment to the contract prices for improper government testing.

Second, nothing indicates that Coastal and the government were in a negotiating posture concerning the possibility of an upward equitable adjustment for alleged defective government testing at the time of the January 13 submittal or at any time thereafter. *See id* at 879; *Cubic Corp. v. United States,* 20 Cl.Ct. 610, 619 (1990). According to Coastal, impasse had been reached because the government consistently maintained that Coastal was not entitled to a favorable price adjustment. *See Cubic Corp.,* 20 Cl.Ct. at 619. Coastal apparently found it impossible to negotiate positive adjustments to the contract prices while the government granted waivers reducing those prices. Indeed, defendant admits that during the last months of 1988 the contracting officer granted several of Coastal's requests for waivers and requests to extend contract delivery schedules on the three contracts that were active at that time.[3]

Defendant contends, however, that the review of these waivers did not place the contracting officer on notice of Coastal's desire for a contract price increase. Defendant then asserts that the January 13 submittal was the first *written* indication by Coastal to the contracting officer regarding a request for an upward equitable adjustment in the contract price. However, the contracting officer was not insulated from Coastal's problems, particularly when he was reviewing proposed contract changes

---

2. In *Dawco,* the Federal Circuit examined a series of contractor-generated documents to evaluate the existence of a dispute for purposes of the CDA. The contractor in that case sought to establish that its response to the Navy's "Change Order Request" and "request for a cost proposal" qualified as a claim under the CDA. *Id.* at 874. The court found that the contractor's cost proposal did not constitute a claim. *Id.* at 878. In effect, the contractor's cost proposal responded to a Navy directive, and "d[id] not even anticipate that a dispute [might] ever arise[.]" *Id.* The change proposal also predated a change order that significantly affected the scope of work to be performed. *Id.*

The *Dawco* court also rejected the proposition that a 1985 claim proposal satisfied the CDA disputes requirement. The court based this determination on language in a contemporaneous letter that "urged the Navy to 'review the proposal and schedule negotiations immediately.'" *Id.* at 879. The court found that the contractor was still in a negotiating posture. *Id.*

3. Defendant presents evidence that the contracting officer reviewing Coastal's claims, Robert J. Panichelle, assumed that position in November 1988 and had no dealings with Coastal on the contracts prior to that time.

that were intended to address the effects that these problems produced.

Third, unlike *Dawco*, the contracting officer's treatment of Coastal's submittal was consistent with recognizing that it contained disputed claims within the contemplation of the CDA. *See Dawco Constr., Inc.*, 930 F.2d at 875. In fact, the contracting officer responded on April 6, 1989, referencing the CDA's 60–day statutory period and indicating that the claims required further investigation. Although the contracting officer's treatment of the submittal is not dispositive on the issue of this court's jurisdiction, it is indicative of the contracting officer's contemporaneous view of Coastal's situation and its January 13 submittal. Under these circumstances, this court finds that the parties were in dispute within the meaning of the CDA.

*Basis of Claim*

■■■ Defendant asserts that Coastal did not adequately state the basis of its claim. *See Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). While the January 13 submittal gives a detailed breakdown of the additional costs for which Coastal asserts the government is liable, it refers vaguely to "various problems caused by the Government" as the genesis of its claims. *See, e.g.,* Def.'s Mot. Dismiss App. at 3–6. It is possible that the lost cover letter further detailed the problems forming the basis of Coastal's claims, but this court is unwilling to speculate on the contents of that letter.

The contracting officer's letter of April 6, 1989, referencing his regulatory duties

under the FAR, referencing Coastal's January 13 submittal as "claims," and indicating the need for further investigation by the government is strong evidence that he believed that the claim was adequately detailed to provide a basis for the government's evaluation. *See Contract Cleaning Maintenance, Inc.*, 811 F.2d at 592. However, the contracting officer later deemed it necessary to ask Coastal for "a summary of the reasons that led to the additional costs" in June 1990. Pl.'s Opp'n [No. 92–185C] Ex. 3 at 1. Thus, the court finds that the January 13 submittal was insufficient in stating the basis of Coastal's claims.[4]

Coastal's June 11 submittal, however, cured this defect. The June 11 submittal identified the basis of Coastal's claims as erroneous specifications and testing errors and provided specific examples of particular contract problems. Vendor letters supplemented Coastal's presentation.

The court emphasizes that the contracting officer requested the June 11 submittal and considered both submittals in rendering his decision. The contracting officer's February 22, 1991 letter confirms the adequacy of Coastal's statement of the basis of its claims. The letter clearly shows that the contracting officer was aware of the total amount of the claims and the basis on which Coastal asserted them. In short, this court finds that Coastal's January 13 submittal, as supplemented by its June 11 submittal, gave the government "adequate notice of the basis and amount of its claim." *Contract Cleaning Maintenance*, 811 F.2d at 592.[5]

---

**4.** The January 13 submittal enumerates in great detail the effects of unspecified government problems on Coastal's production process. For example, Coastal states that "[b]ecause of the delays and interruptions in Coastal's normal production process, the sewing machine operators were not able to achieve the planned levels of efficiency." *Id.* at 3. Coastal goes on to describe the effects on overhead, direct labor costs, and total plant performance. Compared to the specificity with which other claims have been asserted before this court, Coastal's methodology and supporting data seem to provide an adequate basis for evaluating the claim. *See Contract Cleaning Maintenance, Inc.*, 811 F.2d at 592. In contrast, aside from the bald assertion

of "various problems caused by the Government," the January 13 submittal gives no indication of Coastal's reasons for asserting the claims.

**5.** Integration of more than one contractor submittal to create a claim under the CDA has been permitted in a number of instances, with the effective date of the claim running from the date of the final submittal that made the claim complete. *See, e.g., Dawco Constr., Inc.*, 930 F.2d at 879 (integrating a letter requesting a contracting officer's final decision with another letter containing costs and a certification); *Isles Eng'g & Constr., Inc. v. United States*, 26 Cl.Ct. 240, 243 (1992) (integrating contractor's request

*Request for Contracting Officer's Decision*

■■■■■ The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). The request for a final decision may be express or implied. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1578 (Fed.Cir.1992).

Coastal contends that the January 13 submittal requested a final decision. This court finds no explicit request in the material before it. Perhaps the lost cover letter contained such a request but, as that letter cannot be produced and the government contests its existence, this court is obliged to render its decision without it. *But see Dawco Constr., Inc.*, 930 F.2d at 879 (court relied on a letter that was not made part of the record when the record contained an adequate description of its contents and the government conceded that it met CDA requirements).

■■■■ On the other hand, Coastal intended the January 13 submittal as a statutory claim. *Transamerica Ins. Corp.*, 973 F.2d at 1578. The parties agree that Coastal forwarded the January 13 submittal directly to the contracting officer. Coastal indicates that this procedure deviated from the normal change order process. Coastal consistently referred to its January 13 submittal as containing claims, both in the submittal itself and in later documents. The January 13 submittal also contained statutory certifications for each of the contract claims. *Cubic Corp.*, 20 Cl.Ct. at 620. However, the mere existence of proper certifications is insufficient to show a contracting officer's final decision is required. *See, e.g., Isles Eng'g*, 26 Cl.Ct. at 241.

The contracting officer considered that Coastal's January 13 submittal contained statutory claims. In fact, "defendant believed it was a request for a decision when it was received." *Cubic Corp.*, 20 Cl.Ct. at 620 n. 9. The contracting officer informed

Coastal that a decision would not be rendered within 60 days, following statutory requirements. *See* 48 C.F.R. § 33.211(c). In addition, the contracting officer eventually rendered a final decision, a good indication that he thought one was required. The contracting officer treated the January 13 submittal as a claim and did not confuse it with "[a] voucher, invoice, or other routine request for payment." 48 C.F.R. § 33.201; *see, e.g., Contract Cleaning Maintenance, Inc.*, 811 F.2d at 592.

The June 11 letter also contains language that could be interpreted to request a final decision. Coastal's statement that "[w]e have previously submitted claims to you [contracting officer] for these costs. It is our understanding that you will use the information we are providing to help speed up the process of evaluating our claims and paying the sums owed[ ]" shows that Coastal was expecting the contracting officer to act on the claims it had submitted. Pl.'s Opp'n [No. 92–185C] Ex. 3 at 1. The letter also asks the contracting officer to "expedite evaluation and payment of the monies owed to [Coastal]." *Id.* at 3. This language clearly indicates that Coastal wanted a final decision from the contracting officer. *Transamerica Ins. Corp.*, 973 F.2d at 1578.

In sum, this court finds that the January 13 and June 11 submittals adequately expressed a desire for a contracting officer's final decision, and that the government in fact recognized and acted on Coastal's request. "Any other finding offends logic." *Id.* Accordingly, the court finds that the January 13 and June 11 submittals, taken together, satisfy all requirements of the Contract Disputes Act.

*Coastal's Later Submittals*

As this court finds jurisdiction under the Contract Disputes Act based on Coastal's January 13 and June 11 submittals, the court concludes that a valid contracting officer's final decision was rendered on March 20, 1991. Coastal's first complaint

for equitable adjustment with a later letter requesting a contracting officer's final decision). In this instance, claims cognizable under a combination of the January 13 and June 11 submittals would run from June 11, 1990.

in this court, Case No. 92–185C, was filed within the 12–month period following that decision, while the second complaint, Case No. 92–594C, was not. *See* 41 U.S.C. § 609(a)(3).

The parties dispute whether the contracting officer actually received resubmitted claims from Coastal in May 1991, as would be required to toll the court's 12–month statute of limitations. *Summit Contractors v. United States*, 15 Cl.Ct. 806, 808 (1988). The burden of establishing jurisdiction is on the plaintiff. *Cubic Corp.*, 20 Cl.Ct. at 616. Further, "it is the 'contractor [who] bears the risk for delayed or lost submissions prior to receipt by the [contracting officer].'" *Dawco Constr., Inc.*, 930 F.2d at 880 (quoting *American Pacific Roofing Co. v. United States*, 21 Cl.Ct. 265, 268 (1990)).

In any event, because the fact patterns of both complaints are identical (except for the events surrounding the alleged resubmission), the review sought by Coastal under Case No. 92–594C duplicates the review sought under Case No. 92–185C. The court also notes that the second action of the contracting officer did not add anything to his earlier decision. Accordingly, Case No. 92–594C is dismissed.

### CONCLUSION

For the foregoing reasons, this court denies defendant's motion to dismiss Case No. 92–185C and grants defendant's motion to dismiss Case No. 92–594C. Plaintiff's complaint in Case No. 92–594C is dismissed. The clerk is directed to enter judgment accordingly. No costs.