**KIRKHAM CONSTRUCTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–256C.**

United States Court of Federal Claims.

Nov. 22, 1993.

William L. Bruckner, San Diego, CA, for plaintiff.

Luis M. Matos, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. LTC Marilyn H. David, Dept. of the Air Force, of counsel.

## ORDER

NETTESHEIM, Judge.

This matter is before the court on defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1). Plaintiff has opposed. The issue to be decided is whether plaintiff's claim was properly submitted to the contracting officer under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992) (the "CDA"). Argument is deemed unnecessary.

### FACTS

Kirkham Constructors, Inc. ("plaintiff"), entered into contract No. F04684–90–C–0027 with the Base Contracting Division, Vandenberg Air Force Base ("the Air Force"), on July 2, 1990. The initial contract called for the remodeling of an enlisted dining facility on the base. Several modifications issued on the original contract, however, which increased the cost of the project and delayed its completion.

Although the change orders executed for the adjustments to the contract compensated plaintiff for the direct costs of the adjustments, overhead and related delay costs were left unresolved. In Change Orders Nos. P00006 and P00007, the Air Force acknowledged this status in a July 9, 1991 amendment by stating: "While actual costs of changed work have been agreed to by government and contractor representatives, no agreement can be reached regarding contractor claimed costs for 'extended overhead' and alleged government delays."

By letter dated March 18, 1992, plaintiff requested an equitable adjustment of $133,-745.00 for "the impact on unchanged work caused by the numerous Change Orders is-

sued during this project." On April 30, 1992, plaintiff sent another request for an equitable adjustment "for unabsorbed home office overhead and field office cost caused by the defective specification and the failure of the Government to provide timely direction." Plaintiff's claims were, as follows:

| | |
|---|---:|
| Unabsorbed Overhead | $ 33,068.00 |
| Supervision | $ 36,173.00 |
| Telephone | $ 1,149.00 |
| Chemical Toilet | $ 238.00 |
| Trailer | $ 890.00 |
| R.P. Richards | $ 21,978.00 |
| Subtotal | $ 93,496.00 |
| KCI Profits & Bonds (10/2)% | $ 11,407.00 |
| Total Requested | $104,903.00 |

On July 17, 1992, Contracting Officer Capt. Joseph L. Eversole advised plaintiff that the documentation supporting its request for an equitable adjustment was "not sufficient nor accurate enough to grant an adjustment." Plaintiff treated this letter as a denial of its claim for adjustment dated April 30, 1992, and on July 20, 1992, requested a final decision from the contracting officer regarding the claim. Attached to the request was a "Certification of Claim," signed by Dale Kirkham, plaintiff's President, certifying that the claim was made in good faith, that the supporting data were accurate and complete, and that the amount requested accurately reflected the amount for which the Air Force was liable.

On February 9, 1993, plaintiff appealed to the Armed Services Board of Contract Appeals (the "ASBCA") to direct the Air Force to issue a final decision regarding its claim. On March 19, 1993, however, the contracting officer issued a final decision, which subsequently was withdrawn without explanation on March 22, 1993. By letter dated March 31, 1993, the ASBCA directed the Air Force to issue a final decision regarding plaintiff's claim. No subsequent decision has been rendered.

Plaintiff filed its complaint in the Court of Federal Claims on April 28, 1993. Plaintiff alleges that the withdrawal of the March 19, 1993 contracting officer's decision was tantamount to a denial of its claim and asserts that this denial has resulted in damages totaling $104,903.00.

Defendant's motion to dismiss for lack of jurisdiction makes three contentions:

1) Plaintiff's July 20, 1992 letter was not a proper "claim" under the CDA, because it did not identify the actual amount requested or assert a basis for the Government's liability;

2) The certification of the claim was improper because it did not reference the supporting documentation that the contractor purported to be certifying; and

3) Since the contracting officer's July 17, 1992 letter stated only that the contractor had not properly substantiated its request for an equitable adjustment, this letter demonstrates that the parties had not reached an impasse on the claim. Therefore, no amount was in dispute at the time the claim was submitted, as required by *Dawco Construction, Inc. v. United States,* 930 F.2d 872, 878 (Fed.Cir.1991), thereby rendering plaintiff's claim invalid.

Plaintiff responds that its claim satisfies all the requirements of the CDA. Citing, *United States v. General Electric Corp.,* 727 F.2d 1567, 1569 (Fed.Cir.1984), plaintiff asserts that, when viewed together, a series of correspondence may comply with the CDA's requirements. Similarly, plaintiff argues that its certification fulfills the requirements of the CDA, when considered in conjunction with its prior correspondence of April 30, 1992. Plaintiff also points to *Transamerica Insurance Corp. v. United States,* 973 F.2d 1572, 1576–77 (Fed.Cir.1992), as not requiring an express request for a contracting officer's final decision. Such a request may be made implicitly so long as it puts the Government on notice of specific claims.

In its reply brief, defendant again contends that plaintiff's claim lacked the specificity required by the CDA. According to defendant, plaintiff's April 30, 1992 letter "provides a vague assertion that the request for an equitable adjustment was based upon 'defective specification and the failure of the Government to provide timely direction,' but provided no further justification for the claim." Def's Br. filed Oct. 18, 1993, at 5. Further, since plaintiff's certification did not specifically reference any other documents,

the certification did not provide a rationale for the claim or request a sum certain. Defendant also reasserts its contention that the contracting officer's July 17, 1992 request for clarification is not consistent with the parties having reached an impasse before a claim is submitted, as required by *Santa Fe Engineers, Inc. v. Garrett*, 991 F.2d 1579, 1582 (Fed.Cir.1993).

## DISCUSSION

■ Prior to addressing the parties' arguments, an analysis of the purpose of the requirements presently in dispute is instructive. The CDA claim submission and certification requirements are not intended to be a substitute for trial on the merits. Even a cursory survey of recent cases addressing these requirements shows that these requirements were meant to screen out unwarranted or inflated claims. *See Fischbach & Moore Int'l Corp. v. Christopher*, 987 F.2d 759, 763 (Fed.Cir.1993); *Heyl & Patterson, Inc. v. O'Keefe* 986 F.2d 480, 484 (Fed.Cir.1993); *Transamerica*, 973 F.2d at 1578; S.Rep. No. 1118, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5235, 5241–42 (statements by Adm. Rickover). These requirements were not crafted to provide an impregnable barrier by which the Government could defeat all but the most meticulously tailored claims. If a contractor complies in good faith with the CDA requirements, it does not prevail on its claim; it merely gains access to a court wherein the merits of its case can be addressed.

1. *Sufficiency of claim*

■ Section 605(a) of the CDA states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision . . . .," but does not set out exact requirements for presenting a claim. All that is necessary is that the contractor provide the contracting officer with "adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). In *Transamerica* the Federal Circuit used a "common sense analysis" in determining whether the con-

tractor met the claim submission requirements of the CDA. 973 F.2d at 1579. The court viewed the contractor's submissions as a whole and determined that a prior letter submitted to the contracting officer met the CDA requirements when coupled with a later request for a final decision. *Id.* This earlier letter contained "a request for an equitable adjustment of the subcontract, maintaining that the alleged defect in the roofing specifications increased the cost of performance by $241,919." *Id.*

■ Plaintiff's request for an equitable adjustment dated April 30, 1992, claimed "unabsorbed home office overhead and field office cost caused by the defective specification and the failure of the Government to provide timely direction." Attached to this letter were invoices documenting the itemized costs totaling $104,903.00 listed on the request. The request also indicated that the project completion date had been delayed by 195 days. This information is substantially similar to that provided in *Transamerica*. Plaintiff has submitted a claim that satisfies the specificity requirement of the CDA.

■ Defendant contends that plaintiff's earlier letter of March 18, 1992, causes its claim to fail because it requests a different amount—$133,745.00. By essentially submitting two amounts, plaintiff has not specified a "sum certain" in its claim, as required by the CDA. Defendant correctly asserts that all claims under the CDA must seek a sum certain as a matter of right. *Essex Electro Eng'rs, Inc. v. United States*, 22 Cl.Ct. 757, 764 (1991), *aff'd*, 960 F.2d 1576, 1582 (Fed. Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). This requirement, however, is not subject to the overly rigid analysis that defendant applies to plaintiff's claim.

In *Heyl & Patterson*, 986 F.2d at 484, the Federal Circuit held that a contractor's claim satisfied this requirement even though it, too, submitted two separate demands claiming two distinct sums because the sums were alternatives based on distinct legal theories. The court contrasted that type of claim with one in which the contractor "indicates in a single submission that it would accept a specific lower amount if the government refused

the higher amount. Such a submission might not demand a sum certain." *Id.* at 485.

Plaintiff's claims are not alternatives. The April 30, 1992 letter refers to the March 18, 1992 letter as a "previous proposal." It is evident that the April 30, 1992 letter superseded the amount in the previous letter. It contained a much more detailed breakdown of the costs claimed and was accompanied by supporting invoices and worksheets. No indication is present in the correspondence between the parties that there was any confusion regarding the amount that was claimed. In fact, the March 19, 1993, decision of the contracting officer was based on the amount claimed in the April 30, 1992 letter and did not even mention the earlier correspondence.* Plaintiff's claim thus satisfied the sum certain requirement. *See Contract Cleaning,* 811 F.2d at 592 (claim referring to previous written requests, along with Government's reply to letter indicating it treated the last request as the claim, satisfied CDA).

### 2. *Certification of claim*

■ Like the claim submission requirement, the requirement that a claim be properly certified under section 605(d) of the CDA is jurisdictional. *Dawco Constr., Inc. v. United States,* 930 F.2d 872, 877 (Fed.Cir. 1991). "Substantial compliance" with the CDA suffices to meet the certification requirement. *Fischbach & Moore,* 987 F.2d at 763; *Transamerica,* 973 F.2d at 1580. A "hyper-technical" application of the statute is inappropriate in evaluating certification. *Id.* A certification that references prior correspondence is sufficient for CDA purposes. *See United States v. General Elec. Corp.,* 727 F.2d 1567, 1569 (Fed.Cir.1984). Using the *General Electric* decision as an example, the court in *Transamerica* held that even though a certification does not state the amount claimed and does not explicitly acknowledge that the amount requested is an amount for which the contractor believes the Government is liable, it is valid so long as it contains "the critical information required by the statute." *Transamerica,* 973 F.2d at 1580.

■ Plaintiff had only one claim pending before the contracting officer and had engaged in an ongoing discourse with the Air Force for over nine months in an attempt to settle this claim. It is somewhat disingenuous for defendant to assert that the failure to attach or specifically reference the prior claim letter prevented the contracting officer from knowing what claim plaintiff was certifying. It is reasonable to infer from the context in which it was submitted that the certification's reference to "supporting data" included the April 30, 1992 letter. *See Heyl & Patterson,* 986 F.2d at 484 (context of contractor's certification allowed inference that "data" being certified referred to documents submitted in prior requests). Indeed, the withdrawn decision shows that the contracting officer knew exactly what claim was being certified.

Defendant's argument that *Santa Fe Engineers* invalidates a contractor's certification if it only certifies prior requests is misplaced. The certification in that case purported to certify requests that were made two years before the certification. It was this two-year delay and not the fact that the certification referred to a prior claim that caused the court to question the certification. *Santa Fe Eng'rs,* 991 F.2d at 1583. Plaintiff's certification in this case followed less than three months after the April 30, 1992 claim and therefore was certified properly.

### 3. *Existence of a dispute*

■ The CDA also requires that the amount requested must already be in dispute" when the claim is submitted. *Dawco Constr.,* 930 F.2d at 878. Defendant asserts that the contracting officer's response to plaintiff's April 30, 1992 letter merely stated that the documentation of plaintiff's claim was insufficient. It did not indicate that the claim was in dispute. The contracting officer's July 17, 1992 letter stated:

Referencing subject letter, be advised that the documentation provided in sup-

---

* The court acknowledges that this final decision was withdrawn and that no final decision has since been issued. The withdrawn decision has no legal significance. Insofar as defendant has raised the issue of the contracting officer's state of mind, however, the decision is relevant for showing the contracting officer's understanding of what plaintiff was claiming.

port of your request is not sufficient nor accurate enough to grant an adjustment. Be also advised that the burden of proof for such an adjustment is solely the contractor's.

Although this letter does not indicate definitively whether the claim was in dispute, the change orders that were the subject of the claim—Nos. P00006 and P00007—clearly state that "no agreement can be reached regarding contractor claimed costs for 'extended overhead' and alleged government delays." The fact that the parties may have been in negotiations regarding the claim does not mean that no dispute existed. *Dawco Constr.*, 930 F.2d at 879. The amount in the claims was clearly in dispute at the time the claims were made.

Defendant's claim that *Essex Electro Engineers, Inc. v. United States*, 22 Cl.Ct. 757, 766 (1991), *aff'd*, 960 F.2d 1576 (Fed.Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992), countermands this holding is misguided. In that case the claim letters were sent to accompany pricing proposal cover sheets. The court concluded that the prior claims were unilateral cost proposals and were not in dispute. Here, the letters were not treated as pricing proposals, but were *genuine claims for increased costs.* The language in the change orders also indicates that these were not simply pricing proposals.

### CONCLUSION

Based on the foregoing, plaintiff's claim satisfies all jurisdictional requirements of the CDA that defendant thus far has raised. Defendant's motion to dismiss is denied. Although defendant's motion contorts the CDA and the jurisdictional facts, plaintiff's request for sanctions is denied.

**IT IS SO ORDERED.**