CPS MECHANICAL CONTRACTORS,
INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 02–477C.

United States Court of Federal Claims.

March 18, 2004.

Michael J. Jack, Baltimore MD, for plaintiff.

Brian S. Smith, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryan G. Snee, Assistant Director, for defendant.

## OPINION

MARGOLIS, Senior Judge.

This action is before the Court on defendant's motion to dismiss pursuant to R. Ct. Fed. Cl. 12(b)(1). Plaintiff filed a complaint, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–609 (2003) ("CDA"), seeking an equitable adjustment for alleged additional work it performed under a construction contract with defendant. Defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction, claiming that plaintiff has not satisfied the CDA's jurisdictional requirements. After careful consideration of both parties' briefs, this Court GRANTS defendant's motion to dismiss.

### Facts

In August 1996, the United States, acting through the United States Army ("Army" or "defendant"), entered into a contract with CPS Mechanical Contractors, Inc. ("CPS" or "plaintiff") for the renovation of sewer system components at Fort Jackson in South Carolina. According to the contract's statement of work provision, plaintiff's work included "installing 991 l.f. of 10″ pvc gravity sewer, 1149 l.f. of 8″ gravity sewer, 11 manholes, tieing [sic] to existing sewer system and installing 7 chemical injection units." Pl.'s Compl. at 1–2. A dispute arose when the Army directed CPS to install 988 l.f. of 6″ laterals. While CPS performed this work during the contract period, it nonetheless protested that the work was beyond that set out in the statement of work. CPS sent a series of letters to the Contracting Officer ("CO") expressing its view that the 6″ lateral installation work was beyond the scope of work under the contract and thus constituted additional work, which entitled CPS to an equitable adjustment under the contract. In its first letter, dated January 3, 2000, CPS informed the CO that there was a discrepancy between the contract drawings and the contract's statement of work. CPS stated that the drawings included the installation of the 6″ laterals while the contract's statement of work did not. The letter asked the CO to resolve the discrepancy. In a letter dated January 5, 2000, the CO informed CPS that in her opinion there was no discrepancy between the statement of work and the drawings. According to the CO, the statement of work is merely a general statement that provides an overall description of the work to be done, and therefore, the drawings must also be used to determine the work required by the contract. Thus, while certain work may not be included in a contract's statement of work, if it is included in the drawings, it is a part of the contract, and the contractor is responsible for completing such work. Further, the CO found that even if a discrepancy existed, FAR 52.236–21, which states, in relevant part "Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both," resolved the discrepancy. Pl.'s Opp'n at App. 2–3; 48 C.F.R. § 52.236–21(a) (2003).

CPS sent another letter, dated January 6, 2000, to the CO explaining its disagreement with the CO's opinion. CPS noted that, in interpreting the contract provisions, the CO failed to consider another sentence from FAR 52.236.21 which stated, "In differences between the drawings and specifications the specifications shall govern." Pl.'s Opp'n at App. 4. As evidence that the Army interpreted FAR 52.236.21 in the same manner as CPS, CPS noted that the Army had previously deleted a manhole that was shown on the drawings, but that was not included in the statement of work, in order for the drawings

and the statement of work to agree with each other.

On January 24, 2000, the CO responded to CPS's second letter. First the CO explained that the FAR sentence that CPS referenced did not apply to this situation because it only applies where there is an inconsistency between the statement of work and the drawings, and in this case no such inconsistency existed. Citing to a board of contracts appeals case, the CO stated, "[T]he omission in a specification of an item set forth in a drawing is not an inconsistency." *Id.* at App. 5 (citing *Hickman Mechanical, Inc.*, ASBCA No. 46492, 94–2 BCA ¶ 26,914, 1994 WL 171594). Second, the CO explained that even if a discrepancy existed, CPS did not have a valid claim because a bidder has a "duty to notify the contracting officer, prior to bid submissions, of all patent and known discrepancies," and because CPS failed to so notify the CO, it could not now complain of the discrepancy. *Id.*

Thereafter, CPS sent the CO a letter, dated February 7, 2000, expressly asking whether the CO was "denying any liability for the installation of the 6″ pipe[.]" *Id.* at 7. In the letter, CPS asked for a response with an explanation. The CO responded on February 9, 2000, and again stated that according to FAR 52.236–21, no discrepancy existed between the statement of work and the drawings. In a response letter, dated February 18, 2000, CPS again expressed its disagreement with the CO's interpretation of the work called for by the contract and further reserved its right to file a claim for all work associated with the installation of the 6″ laterals.

Thereafter, on May 15, 2002, CPS filed a complaint in this Court seeking an equitable adjustment, in the amount of $51,989.67 plus interest, for the alleged additional work it performed in installing the 6″ laterals. In response, the Army filed a motion to dismiss for lack of subject matter jurisdiction, arguing that CPS failed to satisfy the requirements of the CDA. Specifically, defendant contends that CPS failed to submit to the CO a written demand seeking payment, as a matter of right, for the installation of the 6″ laterals, and further that the CO has not issued a final decision on the issue.

### *Discussion*

In this case, plaintiff invokes the CDA, which gives this Court jurisdiction over actions for claims brought within twelve months of a contracting officer's final decision. 41 U.S.C. § 609(a)(1),(3). Therefore, for this Court to have jurisdiction, plaintiff must show two things: first, that it submitted a claim to the CO, 41 U.S.C. § 605(a); *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541–42 (Fed.Cir.1996), and second, that the CO rendered a final decision on the claim. *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1578–79 (Fed.Cir.1994); *Clearwater Constructors, Inc. v. United States*, 56 Fed.Cl. 303, 311 (2003).

### *CDA Requirements for "Valid" Claim*

Because the CDA leaves the term "claim" undefined, the Court must look to the FAR, the CDA's implementing regulations, to determine what is necessary for a contractor's submission to be deemed a claim.[1] *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed.Cir.1995). The FAR defines a "claim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract.

48 C.F.R. § 52.233–1(c) (2003). Thus, the FAR creates three requirements that a non-routine submission, seeking money damages,[2]

---

1. In *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995), the Federal Circuit stated that a court should also look to the facts of the case, if they are unusual, and thus would affect its decision, and the contractual language, if it includes a provision which defines a claim, and thus would be controlling. *Id.* at 1575, n. 3. Because no unusual facts that would affect the Court's

decision have been presented, nor is there any contract provision that defines the term "claim," the FAR is controlling.

2. In *Reflectone*, the Federal Circuit defined the distinction between routine and non-routine submissions, stating that a non-routine submission is a demand for payment for "unforeseen or unin-

must meet to be a "valid" claim. It must be (1) a written demand or assertion, (2) seeking, as a matter of right, (3) the payment of money in a sum certain. *Reflectone Inc.*, 60 F.3d at 1575. While a claim need not be "submitted in any particular form or use any particular wording," the contractor must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). Further, the claim must request a final decision.[3] *Alaska Pulp Corp. v. United States*, 38 Fed. Cl. 141, 144–45, 145 (1997). All that is necessary to satisfy this requirement is that contractor's submissions show an expression of interest in a final decision by the CO, which may be made expressly or implicitly. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1577 (Fed.Cir.1992). To determine whether the contractor has satisfied these requirements, the Court uses a "common sense analysis" and views the contractor's submissions as a whole. *Kirkham Constructors, Inc. v. United States*, 30 Fed.Cl. 90, 93 (1993) (citing *Transamerica Ins. Corp., Inc.*, 973 F.2d at 1579).

Defendant asserts (1) that CPS did not make a formal demand for payment and (2) that the CO did not issue a final decision in the matter now before this Court. In response, CPS claims that its correspondence with the CO satisfies the CDA requirements. Specifically, CPS argues that it informed the CO numerous times, in writing, that the installation of the 6″ pipes was extracontractual work that required additional compensation, that the CO repeatedly stated that the installation was part of the work required by the contract, and that she would not authorize additional compensation for this work. This Court finds that CPS's submissions to the

CO do not qualify as a valid claim under the CDA because they do not set forth the payment of money in a sum certain.

## A. Basis of Claim

■ To satisfy the first two prongs of the FAR's three-part test a contractor need only submit, in writing, to the CO a clear and unequivocal statement that gives the CO adequate notice of the basis for the claim. *Contract Cleaning Maintenance*, 811 F.2d at 592. To be adequate, the writings allegedly constituting a claim must sufficiently inform the CO of what is being claimed such that the CO can meaningfully review the claim. *Lee Ann Wyskiver*, PSBCA 3621, 94–3 BCA ¶ 27,118, 1994 WL 466490 (Aug. 24, 1994) (holding that a contractor's letter to a CO, objecting to a unilateral service change by the government, sufficiently set forth the basis of the claim where, although the letter was "not as clear as it could have been," the contracting officer understood what the letter challenged).

■ This Court finds that CPS's letters gave the contracting officer adequate notice of the basis of its claim. The letters set forth the basis for CPS's complaint. Plaintiff's letters explained that because there was a discrepancy between the statement of work and the drawings, the statement of work controlled, and therefore the installation of 6″ piping was additional work for which the government was liable. Plaintiff provided documentation, in the form of contract clauses, specification provisions, and drawing references, to support this assertion. Further, the CO understood what CPS was claiming. *See Hamza v. United States*, 31 Fed.Cl. 315, 322 (1994); *Coastal Ind., Inc. v. United States*, 27 Fed.Cl. 713, 718 (1993) (finding contractor adequately set forth the basis of

---

tended circumstances, such as government modification of the contract, ... [which] cause an increase in contract performance costs," while a routine request for payment, on the other hand, is made under the contract, not outside it." *Id.* at 1577. Further, the Court in *Reflectone* used a request for an equitable adjustment as an example of a "written demand for payment as a matter of right which is not 'a routine request for payment.'" *Id.* Because CPS's alleged claim is for an equitable adjustment due to an alleged modification of the scope of work under the

contract it must be deemed a non-routine submission.

3. This requirement is in addition to the three-part test imposed by the FAR and is mandated by the express language of § 605(a) of the CDA, which requires that "all claims ... be submitted to the contracting officer for a decision." *See James M. Ellett Const. Co., Inc.*, 93 F.3d at 1543, n. 4.

its claim where it identified erroneous specifications and testing errors and provided specific examples of particular contract problems, and where the CO's letter confirmed the adequacy of the contractor's basis for its claim by expressly rejecting that the specifications were erroneous or that there were errors in government testing). In response to one of CPS's letters, the CO provided a detailed explanation of why the difference in the specifications and drawings did not amount to an inconsistency. The CO's letter cited both FAR provisions and specific cases. Based on the totality of the correspondence, it cannot be said that CPS failed to provide the CO with the basis for its claim. *See Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed.Cir.1984).

### B. Amount of Claim

■ In addition to articulating a basis for its claim, a contractor must also provide the CO with a clear and unequivocal statement of the *amount* of the claim. *Contract Cleaning Maintenance*, 811 F.2d at 592. This is satisfied if the contractor sets out the specific amount it is seeking or if the amount in dispute can be easily determined by a simple mathematical calculation or from the contractor's submission to the CO. *Metric Constr. Co., Inc. v. United States*, 14 Cl.Ct. 177, 179 (1988). Based on the documents presented by the parties, this Court finds that CPS failed to seek, as a matter of right, a sum certain for the alleged additional work.

■ CPS fails to present any evidence which shows that it submitted any type of written communication to the CO that mentioned a specific amount. Indeed the only statements that imply that CPS is seeking additional compensation are its statement, in its February 7, 2000 letter to the CO, where it asks: "Are you denying any *liability* for the installation of the 6″ pipe? If so, please advise," Pl.'s Opp. at App. 7 (emphasis added), and its statement, in its February 18, 2000 letter to the CO, where it states, "Therefore, in closing, CPS Mechanical reserves the right to file a claim for the installation of all work associated with the laterals." Def.'s Reply at App. 2. Such general statements, without more, fail to satisfy the sum certain requirement. *Executive Court Reporters, Inc. v. United States*, 29 Fed.Cl. 769, 775 (1993) (finding contractor's mere indication that it is entitled to " 'its costs,' " without more, insufficient to satisfy the sum certain requirement).

CPS also fails to show that the amount it now seeks could have been easily determined by the CO through a simple mathematical calculation or from its submissions. *Metric Constr. Co.*, 14 Cl.Ct. at 179. CPS now seeks an equitable adjustment of $51,989.67 for the costs incurred in performing the alleged additional work. According to a cost breakdown CPS attached to its brief, but did not submit to the CO, this amount accounts for expenses associated with: the pipe, the labor to install the pipe, a payroll charge to install laterals, the fuel for equipment, a "Back Hoe and Bobcat," the hotel costs, and "Perdium." Pl.'s Opp. at App. 10. Looking at all of CPS's submissions, the CO could not have determined this amount or determined what kind of expenses CPS had incurred, even had the CO determined that CPS was entitled to an equitable adjustment. *Executive Court Reporters, Inc.*, 29 Fed. Cl. at 775 (finding contractor's letters did not fall within the *Metric Construction* rule where contractor appended no exhibits to its demand letters that contained any dollar figures). This is not a case where a simple mathematical formula can be applied to determine the costs CPS now claims it incurred. *See GPA–I, LP v. United States*, 46 Fed.Cl. 762, 767 (2000). Rather, CPS failed to provide the CO with any dollar figure or documentation that could be used to compute a dollar figure.

Two purposes of the CDA requirements are to screen out unwarranted or inflated claims, *Kirkham Constrs.*, 30 Fed.Cl. at 93 (citations omitted), and to facilitate resolution of contract disputes by negotiation, at the agency level, rather than by litigation, *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1566 (Fed.Cir.1995) (citations omitted). As the court explained in *Executive Court Reporters*, where a contractor is seeking additional compensation, as is the case here, "the amount [sought] represents the crux of the

dispute between the parties." [4] 29 Fed.Cl. at 775. Thus, if no sum certain is specified, the CO cannot settle the claim by awarding a specific amount of money "because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer." *Id.*

Because plaintiff's submissions fail to satisfy the certain sum of money requirement, it is unnecessary to determine whether its submissions sought a final decision by the CO or whether the CO issued a final decision. If plaintiff elects to resubmit its claim to the CO, it should include the specific amount of compensation it is seeking (such as through the cost breakdown it provided this Court, but did not provide to the CO) and to explicitly request that the CO render a final decision on its request for an equitable adjustment.

### *Conclusion*

For the foregoing reasons this Court **GRANTS** defendant's motion to dismiss without prejudice. The Clerk will dismiss the complaint. No costs.

---

**4.** In this case, the parties dispute whether CPS is entitled to an equitable adjustment and, if so, the amount for which CPS entitled. This is not a case where the amount is settled, and the only dispute between the parties is whether the contractor is entitled to that amount. *See Metric Constr. Co., Inc. v. United States,* 1 Cl.Ct. 383, 391–92 (1983).