**METRIC CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 349–87C.

United States Claims Court.

Jan. 15, 1988.

Henry K. Hamilton, Seattle, Wash., for plaintiff; Ulin, Dann, Elston and Lambe, of counsel.

Carol N. Park–Conroy, Dept. of Justice, Washington, D.C., with whom was Richard K. Willard, Asst. Atty. Gen., for defendant.

## OPINION

ROBINSON, Judge.

This case is before the Court on defendant's motion for partial summary judgment. The sole issue presented is whether plaintiff's demands upon the contracting officer for extended home office overhead costs in "an amount exceeding $91,000" and for third-party indemnification fees "exceeding $7,500" allegedly incurred during performance of a contract with the U.S. Army are sum-certain claims cognizable under the Contracts Disputes Act (CDA), which would allow plaintiff's resort to judicial remedies pursuant to 41 U.S.C. § 605(c)(5). For reason hereinafter stated, the Court finds that plaintiff's claims do not substantially comply with the requirements of the CDA. Thus, the Court grants defendant's motion for partial summary judgment, but without prejudice to the plaintiff to resubmit its claims to the contracting officer and to pursue judicial remedies should the contracting officer deny the resubmitted claims or fail to issue a decision on them within 60 days after the plaintiff's resubmittal.

*Facts*

The Department of the Army awarded Contract No. DACA 09–82–C–0034 to Metric Construction Co. on March 31, 1982, for the construction of four new barracks buildings, plus a central energy plan, at the Army's National Training Center, Fort Irwin, California. ("Barracks Contract"). The Department of the Army also awarded to Metric Construction Co. on May 7, 1984, Contract No. DACA 09–84–C–0056 for the construction of an ammunition storage depot at Fort Irwin, California. ("Ammo Contract").

A series of modifications to the Barracks Contract increased the total contract amount by $135,087 and extended the contract performance period by 91 days. A single, unilateral modification by the Army of the Ammo Contract increased the contract price by $480,260 and suspended the project for 54 days.

On May 15, 1986, counsel for Metric wrote to the contract administrator a detailed letter regarding the Ammo Contract. The May 15, 1986 letter asserted Metric's belief that it was entitled to $107,525 for extended home office overhead, as computed using the Eichleay formula, profit of $54,921 and $30,358 for third-party indemnification fees which Metric claimed it incurred as a result of the Ammo Contract modification.

By letter dated July 11, 1986, counsel for Metric wrote to the contract administrator regarding the Barracks Contract, setting forth Metric's belief that it was entitled to extended home office overhead and third-party indemnification costs allegedly incurred as the result of modifications to the Barracks Contract. Unlike the May 15, 1986 letter which stated the amounts Metric believed it was owed, the July 11, 1986 letter stated no amount, but merely said: "The issues now to be resolved are the extended contract performance period home office overhead costs as well as the third-party indemnification fee." Metric included with the July 11, 1986 letter a voluminous appendix.

On November 3, 1986, counsel for Metric again wrote the contract administrator. The November 3, 1986 letter summarized the grounds upon which Metric sought contract adjustments as explained in the May 15, 1986 and July 11, 1986 letters, and incorporated those letters by reference. The November 3, 1986 letter claimed entitlement to $107,525 representing extended home office overhead, $30,358 representing third-party indemnification costs, and $54,921 in profit for the Ammo Contract. The November 3, 1986 letter also sought extended home office overhead costs "in an amount exceeding $91,000" and "third-party indemnification fees exceeding $7,500" under the Barracks Contract. In addition, Metric formally requested in its November 3, 1986 letter a contracting officer's decision for an equitable adjustment to the Barracks and Ammo Contracts.

Counsel for Metric in a letter dated February 18, 1987, demanded a decision by the contracting officer upon the November 3, 1986 request for an equitable adjustment. The February 18, 1987 letter included a copy of the November 3, 1986 letter and a certification statement signed by the President of Metric, Tom Miller. The contracting officer has not yet issued a final, written decision on Metric's request for an equitable adjustment to the Barracks and Ammo Contracts.

Metric filed suit in this Court on June 12, 1987. In its complaint, Metric seeks "judgment against the United States in an amount to be proven at trial."

### Discussion

■ Under 41 U.S.C. § 609(a), a contractor may bring an action directly on a contracting officer's final decision in the United States Claims Court. A contracting officer's final decision must be in writing, a copy of which must be provided to the contractor. 41 U.S.C. § 605(a). If a contracting officer fails to issue a final, written decision on a contract claim within 60 days of receipt of a properly submitted claim, 41 U.S.C. § 605(c)(5) deems the claim denied and authorizes the commencement of a suit pursuant to § 609(a). Thus, a final decision by a contracting officer or the deemed denial of a claim is the "linchpin" for suit in the Claims Court. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966 (1981). However, a proper claim has to be submitted to a contracting officer before a final decision can be rendered or before a claim can be deemed denied. *Straga v. United States,* 8 Cl.Ct. 61 (1985).

■ A contractor's claim must be in writing, 41 U.S.C. § 605(a), though it need not be submitted in any particular form or use any particular language. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586 (Fed.Cir.1987). The writing need only give clear and unequivical notice of the basis and the amount of the claim. *Id.* Courts generally interpret the Contract Disputes Act as requiring a claim to state a sum-certain amount. *Z.A.*

*N. Co. v. United States,* 6 Cl.Ct. 298 (1984); *Tecom, Inc. v. United States,* 732 F.2d 935 (Fed.Cir.1984). However, a claim in which the amount in dispute can be easily determined by a simple mathematical calculation or from the contractor's submission to the contracting officer is sufficient for purposes of the Act. *Metric Construction Co., Inc. v. United States,* 1 Cl.Ct. 383 (1983).

The rationale for requiring that claims submitted to the contracting officer must specify a particular money amount is sound. When a claim seeks a particular amount and the contracting officer finds entitlement to the amount sought, the claim can be settled and the contractor is precluded from taking an appeal under the doctrine of accord and satisfaction. *See, Hoffman Construction Co. v. United States,* 7 Cl.Ct. 518 (1985). If, however, the contracting officer finds entitlement to only a portion of the amount sought, the contractor is entitled to appeal the difference between the particular amount sought and that awarded by the contracting officer. 41 U.S.C. §§ 606, 609(a). When, however, no specific amount or an open-ended amount is sought, the contracting officer cannot settle the case by awarding the contractor the amount sought. Thus, a final decision by a contracting officer could not preclude a contractor from filing suit seeking the difference between the amount awarded and a greater amount that the contractor has not specifically stated.

■ Metric contends that it has substantially complied with the Contract Disputes Act, despite the fact that its November 3, 1986 letter seeks extended home office overhead "in an amount exceeding $91,000" and third-party indemnification fees "exceeding $7,500." Metric argues that the July 11, 1986 letter which was part of Metric's formal request for a contracting officer's decision clearly sets forth factual background and supporting data which would allow the contracting officer to determine the sum-certain amounts of Metric's claims under the Barracks Contract. According to Metric, the contracting officer could derive the sums by simply adding up

the figures for extended home office overhead and third-party indemnification fees as broken down in each particular exhibit of a detailed appendix.

While the Court agrees with Metric that its July 11, 1986 letter defines Metric's claims as ones for extended home office overhead and third-party indemnification fees, the Court does not agree that the exhibits to the July 11, 1986 letter disclose that the claims are for $95,890 and $8,290 respectively, as Metric now states. The exhibits to the July 11, 1986 letter are voluminous and consist of many different letters and forms. Nearly all of the documents contain some dollar amounts. The amounts for extended home office overhead and third-party indemnification fees are not distinguishable on each document. The complete exhibits are, at the very least, confusing.[1] The Court finds that it would not be a matter of simple arithmetic for a contracting officer to determine the sum-certain amounts of Metric's claims for these two items. Rather, given the voluminous exhibits, it would be quite easy for a contracting officer to compute incorrectly the amounts that Metric claims. Surely, the CDA did not intend to give rise to disputes over the disparities in such computations. Accordingly, the Court holds that Metric has not stated sum-certain claims on the Barracks Contract cognizable under the Contract Disputes Act. Therefore, this Court presently lacks jurisdiction over Metric's suit on the Barracks Contract.

### Conclusion

The Court does note that Metric did state with specificity in the May 15, 1986 letter the amounts it claims under the Ammo Contract. Metric also recited these specific amounts in its November 3, 1986 letter. However, Metric did not state the sum-certain amounts it sought under the Barracks Contract in either its July 11, 1986 letter or its November 3, 1986 letter. Nor did Metric seek a specific sum in the ad damnum clause of its complaint in this Court. The

Court can only conclude that Metric itself was unable to assert sum-certain amounts until forced to do so in its response to the defendant's motion for partial summary judgment. That Metric is now able to state its sum-certain claims do not vest jurisdiction in this Court over Metric's Barracks Contract claim. *See, Prefab Products, Inc. v. United States*, 9 Cl.Ct. 786 (1986). Thus, the Court dismisses plaintiff's complaint as to the Barracks Contract claim. However, the dismissal is without prejudice to the plaintiff's right to perfect jurisdiction in this Court by submitting sum-certain claims to the contracting officer and pursuing judicial remedies should that contracting officer deny the resubmitted claims or fail to issue a decision within the required 60-day period.

---

**1.** In fact, the Court's effort to compute the amount of plaintiff's extended home office overhead resulted in a total of $93,629, which is less than plaintiff's computations reflect, as the total amount for this item.