**EXECUTIVE COURT REPORTERS, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 93–4C.**

United States Court of Federal Claims.

Nov. 1, 1993.

Richard C. Spitzer, Rockville, MD, for plaintiff.

Deborah A. Bynum, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. William S. Scherman and Denise M. O'Brien, F.E.R.C. of counsel.

## OPINION

NETTESHEIM, Judge.

This case comes before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1), (4). With regard to defendant's jurisdictional challenge, the primary issue is whether plaintiff's correspondence with the U.S. Federal Energy Regulatory Commission concerning the contract at issue constituted a valid "claim" pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601–613 (1988 & Supp. IV 1992) (the "CDA"), as that term is defined in 48 C.F.R. § 52.233–1 (1992), a regulation incorporated by reference into plaintiff's contract. Assuming a valid claim, another jurisdictional issue becomes whether the contracting officer made a final decision regarding any claim of money. In the alternative, defendant argues that plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. This challenge hinges on whether plaintiff has alleged sufficient facts to support a claim for termination for convenience costs. Plaintiff has opposed and argument is deemed unnecessary.

## FACTS

The following facts are derived from the complaint, except where otherwise indicated. Executive Court Reporters, Inc. ("plaintiff"), a Maryland corporation, engages in the business of reporting and transcribing proceedings for both commercial and government clients.

Plaintiff submitted a proposal dated September 11, 1990, to the U.S. Federal Energy Regulatory Commission ("FERC" or "the Commission") in response to an interim solicitation for services in the form of a

Request for Quotations ("RFQ"), specifically FERC RFQ No. DE–RF39–91RC–00001. This solicitation, which was a set-aside for small businesses, required the contractor to provide stenographic services for the Commission's administrative hearings at no cost to the Government. These services had previously been performed by Ace–Federal Reporters, Inc. ("Ace"). Defendant indicates that the Commission's Contracting Officer, James R. Higgins, had previously determined that renewal of the Ace contract, which was due to expire on September 30, 1990, "would not be in the Government's best interests." Declaration of James R. Higgins, undated, ¶ 4.

In addition to plaintiff's proposal, FERC received two other proposals from small businesses, including Alderson Reporting Co., Inc., and Ann Riley Associates, Ltd. ("Riley"). Defendant contends that because plaintiff's bid was the lowest,[1] the Commission awarded the contract in the form of a purchase order to plaintiff on September 26, 1990. The contract extended from October 1, 1990, through February 28, 1991, with a one-month renewal option.

According to defendant, the day before the contract award, i.e., September 25, 1990, Ace filed a protest with the General Accounting Office (the "GAO"),[2] arguing that it was improperly excluded from competing for the contract because the interim solicitation was restricted to small businesses; Ace failed to qualify under this rubric. The Commission awarded the contract to plaintiff despite Ace's protestations, because the "FERC Executive Director, George L.B. Pratt, found urgent and compelling circumstances warrant[ed] an award...." Higgins Decl. ¶ 13.

Plaintiff alleges that, immediately preceding and following the contract award, it met with various Commission contracting officials to discuss equipment and personnel needs to ensure timely compliance with the contract. Specifically, the officials discussed personnel scheduling, format and docketing procedures, and hearing assignments.[3] Commission officials also inquired as to whether plaintiff would be able to begin work as early as September 28, 1990, the date on which the Ace contract was due to expire. Plaintiff contends that these discussions compelled it to move forward and make all the arrangements necessary to ensure contract compliance, including hiring additional staff, obtaining additional office space and copier facilities, and arranging for other related services as required to commence work.

On September 28, 1990, seeking to prevent performance of plaintiff's contract, Ace applied for a temporary restraining order ("TRO") and moved for a preliminary injunction in the United States District Court for the District of Columbia. Ace's action was predicated on the fact that the Commission "unfairly excluded [it] from consideration for the award of the Contract." Compl. filed Jan. 7, 1993, ¶ 6. Plaintiff attended the hearing for injunctive relief where the court granted the TRO.

Notwithstanding the court's decision regarding Ace's TRO action, plaintiff alleges that Mr. Higgins instructed it "to 'remain prepared to assume performance of the contract on one day's notice.'" Compl. ¶ 8. Plaintiff further contends that this directive was consistent with the Commission's belief that it would ultimately prevail in the litigation surrounding plaintiff's contract.[4]

On October 16, 1990, the court granted Ace's motion for preliminary injunction.

---

1. Defendant further states that plaintiff's bid was unique in that it contained a bonus bid provision, whereby plaintiff would pay a bonus to the Commission for each page of the original transcript. Plaintiff's bid also set ceilings on prices for the general public.

2. Ann Riley Associates, Ltd., also filed a protest concerning the award of plaintiff's contract.

3. According to defendant, the Contracting Officer's Technical Representative instructed plaintiff to contact him daily because hearing needs were established on a daily basis.

4. James Higgins declares that he "would not have suggested that ... [plaintiff] stand by, ready for performance, pending a reversal of [the court's] position ..., because GAO protests were still pending." Higgins Decl. ¶ 16.

The injunction maintained the status quo by directing Ace to continue furnishing services to the Commission until such time as GAO issued decisions concerning the pending protests. The court also prohibited the Commission from awarding the contract for stenographic services to any entity except Ace.

On December 14, 1990, GAO denied in part and dismissed in part Ace's protest, finding that the Commission properly set aside the solicitation for small businesses and that Ace therefore was ineligible for the award. This decision, however, was limited in scope in that it addressed only the Ace, not the Riley, protest. Given the GAO decision, the Commission moved to vacate the preliminary injunction issued by the district court. The district court declined this request until GAO issued a decision on the Riley protest.

Defendant notes that on January 17, 1991, GAO denied Ace's request for reconsideration. On February 8, 1991, GAO considered the Riley protest, finding that the Commission erred in awarding the contract to plaintiff because the Commission considered bonus bids, an award criterion not properly specified in the initial solicitation. In rendering its decision, GAO did not recommend that the deficiencies be remedied or that the competition be reopened, because the period of performance under plaintiff's contract was due to expire on February 28, 1991.

Plaintiff alleges that, even though it performed no work under the contract, it sustained losses resulting from the Commission's directive "to remain ready to perform if and when the injunction was lifted." Compl. ¶ 15. Plaintiff further contends that on several occasions it requested termination of the contract so that it could mitigate expenses associated with "maintain[ing] readiness for performance." *Id.* According to plaintiff, the Commission con-

sistently refused such requests for termination.

In a letter to Mr. Higgins dated March 20, 1991, plaintiff requested that it be released from the contract under the theory of constructive convenience termination. Plaintiff argues that because its costs derive from the Government's suspension of the contract, the Government has constructively terminated plaintiff's contract for convenience.

With regard to the March 20 letter, defendant contends that plaintiff "merely requested termination so that it might submit a claim at a later date." Def's Br. filed Apr. 27, 1993, at 5 (citation omitted). Defendant further argues that the letter failed to provide a specific recovery amount. Finally, defendant emphasizes plaintiff's admission that it "did not perform even one day's work under the contract." *Id.*

Correspondence between the contracting officer and plaintiff continued from March 20, 1991, through January 9, 1992.[5] In this correspondence plaintiff recounted its conversation with Mr. Higgins during which plaintiff was instructed "to remain prepared to assume performance on one day's notice." Def's Br. filed Apr. 27, 1993, at 6. In a letter dated August 20, 1991, plaintiff also recounted several conversations with "FERC contracts and FERC legal" staff where individuals represented to plaintiff that as soon as the court dissolved the injunction, plaintiff would immediately commence work on the contract. *Id.* at 71.

In the letters plaintiff also repeated its claim for termination for convenience, requested a formal contracting officer's final decision on the matter, and informed the contracting officer that a failure to render such a decision would constitute a denial of plaintiff's claim. On January 9, 1992, Charles C. Shank, former Chief of the Institutional Procurement Branch, Division of Procurement,[6] FERC, denied plaintiff's re-

---

5. Theodore T. Siomporas replaced Mr. Higgins as the Commission's contracting officer in June 1991.

6. Serving as Chief of the Institutional Procurement Branch, Mr. Shank "was a duly appointed

Contracting Officer." Declaration of Charles C. Shank, undated, ¶ 1.

quest for termination for convenience, finding no ground upon which payment would be warranted. The rationale underlying this decision, as articulated in the January 9 letter, rested on the fact no effort existed to be terminated given that "no performance was (or could be) required by FERC, and ... no performance was accomplished by ... [plaintiff]."

In a letter dated March 3, 1992, plaintiff sought reconsideration of the Commission's decision, arguing that pursuant to "FAR 49.201(a) and FAR 31.205.42 ... [plaintiff] was entitled to recover fair compensation for not only the work done under ... [the] contract, but also for 'the preparations made' for contract performance." Compl. ¶ 19. On March 23, 1992, Mr. Shank denied reconsideration of the matter, stating that the contract not only did not contemplate a preparation period for performance, but also failed to provide "any provision for recovery of non-recurring costs."

On April 28, 1992, plaintiff requested written confirmation that the letters dated January 9, 1992, and March 23, 1992, constituted final decisions, and therefore were appealable. Plaintiff further stated that it would interpret the letters as final appealable decisions if the Commission failed to respond by May 13, 1992. Plaintiff maintains that it never received any correspondence from the contracting officer regarding this request, nor has it received any other communications from the contracting officer pertaining to this contract.

Plaintiff filed suit in the United States Court of Federal Claims on January 7, 1993, seeking damages in the amount of $33,900.00, plus fees and costs.

## DISCUSSION

### 1. *Motion to dismiss*

■ When evaluating a motion to dismiss for lack of subject matter jurisdiction and for failure to state a cause of action upon which relief can be granted, the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *See also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988), *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). The central issue in evaluating such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

■ Plaintiff bears the burden of establishing jurisdiction. *Reynolds*, 846 F.2d at 748 (citing cases). Dismissal is appropriate only if "it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). For purposes of passing on a motion to dismiss pursuant to RCFC 12(b)(1), the court is not confined to an examination of the complaint. Instead, the court may consider "evidentiary matters outside the pleadings." *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986) (citations omitted).

■ The jurisdiction of the Court of Federal Claims rests on two fundamental requirements enunciated in the CDA. First, all government contractors must submit a valid claim under section 605(a). *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 877–79 (Fed.Cir.1991). Second, the contracting officer must issue a final decision regarding the claim, or in the alternative, be deemed to have denied the claim through inaction. 41 U.S.C. §§ 605(a), (c)(5); *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981) (stating that a contractor may not appeal without a contracting officer's final decision).

### 2. *Whether plaintiff's correspondence qualifies as a claim under the CDA*

According to the CDA, "[a]ll claims by a contractor against the government relating

to a contract shall be in writing and shall be submitted to the contracting officer for a decision...." 41 U.S.C. § 605(a). Because the CDA does not expressly define what constitutes a valid claim, the courts have examined the regulations implementing the CDA, the legislative history of the CDA, and the specific contract provision at issue. *Dawco*, 930 F.2d at 877. In this case the controlling regulation, Federal Acquisition Regulation ("FAR") 48 C.F.R. § 52.233–1, incorporated by reference into plaintiff's contract, provides, in pertinent part:

> *Claim*, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract....

(Emphasis in original.)

■ FAR § 52.283–1 indicates three requirements necessary for a valid claim: 1) the contractor must submit a demand in writing to the contracting officer; 2) the demand or assertion must include a sum certain; and 3) the contractor must request a final decision from the contracting officer. *See also Tecom, Inc. v. United States*, 732 F.2d 935, 936–37 (Fed.Cir.1984) (sum certain); *Paragon Energy*, 227 Ct.Cl. at 192, 645 F.2d at 976 (written final decision).

■ In addition, a contractor's demand to a contracting officer only qualifies as a claim under the CDA if the amount requested is already in dispute. *Dawco*, 930 F.2d at 878. To satisfy this requirement, the contractor must clearly indicate that its demand concerns an existing dispute as to which the parties had previously abandoned negotiations. *Dawco*, 930 F.2d at 879. Cost proposals and correspondence indicating disagreement during negotiations, therefore, will not qualify as claims under the CDA. *Id.* at 878; *see Transamerica Ins. Corp., Inc. v. United States*,

973 F.2d 1572, 1579 (Fed.Cir.1992) (holding "an expressed desire to ... work toward a claim's resolution" may constitute a claim); *Mayfair Constr. Co. v. United States*, 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988) (holding a "pre-dispute, negotiation posture" does not satisfy the CDA).

■ Although the first prong of the claim inquiry requires that a contractor's demand be in writing, no precise form or particular wording must be employed to qualify the demand as a valid claim under the CDA. *Transamerica Ins.*, 973 F.2d at 1578; *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). The writing need only be "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* (citations omitted). When appropriate, a series of letters can be read together to comprise a clear and unequivocal statement giving the contracting officer notice of the basis for the contractor's claim.[7] *Alliance Oil & Refining Co. v. United States*, 13 Cl.Ct. 496, 499 (1987), *aff'd mem.*, 856 F.2d 201 (Fed.Cir.1988) (Table).

Undeniably, plaintiff's correspondence dating from March 20, 1991, through January 9, 1992, constitutes a demand in writing and thereby satisfies the first prong of the claim inquiry. Moreover, plaintiff's correspondence properly informed the contracting officer as to the basis of the claim. Plaintiff repeatedly charged that the Government had constructively terminated its contract and accordingly demanded damages pursuant to the termination for convenience provision of the contract. The damages sought included compliance costs associated with FERC's demand to plaintiff to remain ready to perform the contract if and when the injunction was lifted.

The contractor, however, must not only in writing articulate the basis for the claim, but also must make "a clear and unequivocal statement ... of the ... amount of the

---

**7.** A party's reference to the contractor's demand as a "claim" does not automatically render the demand a valid claim for purposes of the CDA.

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1394 (Fed.Cir.1987).

claim." *Contract Cleaning,* 811 F.2d at 592. As the Federal Circuit has repeatedly noted, "a claim must seek payment of a sum certain" to satisfy the second prong of the claim inquiry. *Dawco,* 930 F.2d at 878; *see Essex Electro Eng'rs, Inc. v. United States,* 960 F.2d 1576, 1580–81 (Fed.Cir.), *cert. denied,* ——— U.S. ———, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992) (holding valid claim under CDA requires sum certain); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1395 (Fed.Cir.1987) (same); *Contract Cleaning,* 811 F.2d at 592–93 (same); *Tecom,* 732 F.2d at 936–37 (same). In most cases this means that the contractor must specify the exact dollar amount sought in recovery. *Metric Constr. Co., Inc. v. United States,* 1 Cl.Ct. 383, 391 (1983). Including an exact amount is of paramount importance because the amount represents the crux of the dispute between the parties. *Id.*

■ Courts, however, have relaxed the sum-certain requirement in limited instances. For example, a contractor's demands will satisfy the sum-certain requirement whenever "the amount in dispute can be easily determined by a simple mathematical calculation...." *See Metric Constr. Co., Inc. v. United States,* 14 Cl.Ct. 177, 179 (1988) (holding contractor's demand failed to state a sum certain because such an amount could not be easily derived from the volumes of documents and confusing exhibits appended to the demand letter).

■ The policy rationale underlying the sum certain requirement is to prevent contractors from seeking appellate relief on claims settled by the contracting officer. *Metric Constr.,* 14 Cl.Ct. at 179. Whenever a contracting officer fully settles a claim, the contractor cannot take an appeal, according to the doctrine of accord and satisfaction. If the contracting officer settles only a portion of the claim, the contractor may appeal, arguing entitlement to the difference between the original amount requested and the amount settled by the contracting officer. A problem, however, arises when the contractor fails to specify a sum certain. In this instance, the contracting officer cannot finally settle a case by

simply awarding a specific amount of money, because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer. *Id.*

■ Despite the fact that plaintiff repeatedly corresponded with the contracting officer, plaintiff never included a sum certain in any of its written correspondence. Plaintiff argues that the request for a sum certain was unnecessary because FERC had informed plaintiff's counsel that it would not compensate plaintiff in any manner. Plaintiff, however, fails to cite any authority for the proposition that the sum certain requirement need not be met whenever the contractor has knowledge that its demand will be denied. This proposition simply cannot be reconciled with existing authority or the policy rationale underlying such authority.

In the letter dated March 20, 1991, to Contracting Officer Higgins, plaintiff stated "at this point, it is now appropriate for ... [us] to submit ... *costs* under the contract...." (emphasis added). Plaintiff further stated that "we submit that the Government has constructively terminated ... [Executive's] contract for convenience, and that ... [Executive's] claim for payment should properly be considered...." Plaintiff, instead of stipulating a specific dollar amount, generally referenced its claim to payment by indicating entitlement to "its costs." Without more, plaintiff has failed to satisfy the second prong of the claim inquiry requiring specification of a sum certain.

Plaintiff's letters also do not fall within the ambit of the *Metric Constr.* rule, which allows a contractor's demands to satisfy the sum certain requirement if the amount can be readily determined through a simple mathematical calculation. In this case plaintiff appended no exhibits containing dollar figures to its demand letters. Although in the March 20, 1991 letter, plaintiff referenced the affidavit of Edward Donovan, plaintiff's president, which alleg-

edly discussed the effort expended by plaintiff to remain prepared for contract performance, the affidavit was not appended to the March 20, 1991 letter, and there is no indication from the current record that this affidavit included any specific dollar amounts. Hence, plaintiff has not met the jurisdictional prerequisites of the CDA and therefore cannot maintain, at this time, an action in this court.

■ If plaintiff elects to revise its demand to the FERC contracting officer to include a sum certain, plaintiff must include only the amount of money sought as a matter of right. *Essex,* 960 F.2d at 1580–81. In *Essex* the contractor demanded interest on a payment and submitted revised cost proposals in support of its demand. The appeals court held that the contractor's demand failed to constitute a claim under the CDA because of a failure to stipulate a sum certain "as a matter of right." *Id.* (emphasis added). The court reached this conclusion because the documents relied upon by the contractor in support of its interest claim "were mere 'proposals' *for 'work to be performed,'*" and, as such, the documents asserted nothing as a matter of right. *Id.* at 1582 (emphasis added).

In the case at bar, plaintiff's complaint seeks recovery in the amount of $33,900.00, plus fees and costs. Plaintiff apparently derives this amount by relying, in part, on its bid to the interim solicitation, FERC RFQ No. DE–RF39–91RC–00001, which specified an amount of $29,343.45.00 for contract performance. The RFQ request, like the revised cost proposals in *Essex,* addressed work to be performed. Under the logic of *Essex,* the submission of the RFQ alone would assert nothing as a matter of right.

Moreover, in the March 20, 1993 letter to Contracting Officer Higgins, plaintiff stated that it "was unable to cancel some of the contracts which it had made in anticipation of the contract." This language indicates that plaintiff, in fact, did cancel some contracts. It is therefore questionable whether plaintiff can claim as a matter of right the sum of $33,900.00, plus fees and costs, considering that the original RFQ bid, which considered all costs, including the costs of all necessary contracts, listed an amount of $29,343.45.00.

Because plaintiff has failed to satisfy the second prong of the claim inquiry under the CDA, it is unnecessary to decide whether plaintiff has satisfied the remaining requirements for a valid claim under the CDA, such as whether the contractor requested a final decision or whether an actual dispute existed between the parties. Similarly, it is unnecessary to address whether the contracting officer issued a final decision if plaintiff has not yet submitted a valid claim under the meaning of the CDA.[8]

---

8. Defendant also argues that, even assuming proper jurisdiction, plaintiff has not alleged sufficient facts to set forth a claim for termination for convenience costs under the contract.

Plaintiff alleges that "constructive termination of ... [the] contract result[ed] from the Government's suspension of the contract during the entire period for performance ... [and from the Government's explicit direction to Executive] to remain ready to perform immediately." Compl. ¶ 16. First, defendant notes that both the relevant regulations governing termination for convenience and the termination clause in the contract in question clearly state that a contracting officer may terminate for convenience only when it is in the Government's best interests. 48 C.F.R. § 49.101(b) (1993). *See John Reiner & Co. v. United States,* 163 Ct.Cl. 381, 392, 325 F.2d 438, 444 (1963), *cert. denied* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964) (indicating contracting officer's cancellation of contract necessary to obtain damages under the termi-nation for convenience clause). In addition, the regulation specifies that the contracting officer may only terminate after providing adequate written notice to the contractor. 48 C.F.R. § 49.102(a). Thus, defendant argues that, to invoke the termination for convenience clause of the contract, a contractor must allege an action taken on behalf of the procuring agency to terminate the contract.

In this case the federal district court terminated the contract by enjoining plaintiff from performing any work under the contract. Plaintiff even admits that it performed no work under the contract because of the court injunction, not because of any action by FERC. In addition, the present record is devoid of evidence that the contracting officer or any other member of FERC, at any time, took affirmative action to terminate the contract. Such evidence is undoubtedly missing from the record because the injunction effectively precluded FERC from taking action regarding the contract. Because

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall enter judgment dismissing the complaint for lack of jurisdiction, which operates as a dismissal without prejudice.

**IT IS SO ORDERED.**

No costs.

plaintiff has failed to allege any action taken by the procuring agency to terminate the contract, it would appear that plaintiff cannot meet its burden to claim termination for convenience costs. The only action in this case was taken by a court, not the procuring agency.

Curiously, plaintiff never addressed this argument in its response to defendant's motion to dismiss. Plaintiff, however, did discuss defendant's second argument, which rests on the principle that when a contract is deemed illegal, the contracting officer can terminate without payment pursuant to the termination for convenience clause of the contract. The court deems it unnecessary to comment on the secondary argument advanced by defendant.