ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Exelis, Inc. | ) ASBCA No. 60131 |
| | ) |
| Under Contract Nos. N65236-07-C-5876 | ) |
| FA8532-12-C-0002 | ) |

APPEARANCES FOR THE APPELLANT:    Steven M. Masiello, Esq.
Joseph G. Martinez, Esq.
Dentons US LLP
Denver, CO

APPEARANCES FOR THE GOVERNMENT:    E. Michael Chiaparas, Esq.
DCMA Chief Trial Attorney
Samuel W. Morris, Esq.
Trial Attorney
Defense Contract Management Agency
Chantilly, VA

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON APPELLANT'S MOTION TO SUSTAIN THE APPEAL AND DISMISS THE GOVERNMENT'S CLAIM

Appellant, Exelis Inc. (Exelis) appeals from a contracting officer's final decision asserting a government claim pursuant to Cost Accounting Standard (CAS) 404, pertaining to Exelis' purportedly noncompliant accounting for the costs of a building lease. The parties do not dispute that Exelis is subject to the CAS by virtue of its performing over $50 million per year in government contracts. *See* 48 C.F.R. §§ 9901.306, 9903.201. As a contractor subject to the CAS, Exelis is required to measure its indirect costs in accordance with the CAS and its disclosed cost accounting practices. One of these indirect costs is Exelis' cost of leasing office space that is then allocated to Exelis' government contracts. The government asserts that Exelis improperly accounted for the lease costs by treating the lease as an operating lease rather than a capital lease. According to the government, this mischaracterization of the lease resulted in Exelis overcharging the government for the indirect cost of the building lease in each of Exelis' government contracts, both flexibly-priced and fixed-price. Here, the record contains a cost type contract, N65236-07-C-5876 (R4, tab 2) and a firm-fixed-price contract, FA8532-12-C-0002 (R4, tab 13) that the government contends are representative of Exelis' government contracts (R4, tab 11 at 149).

In 2007, the Defense Contract Audit Agency (DCAA) released its audit of Exelis' calendar year 2004 final indirect cost rates (R4, tab 3). In the audit report, DCAA questioned Exelis' lease costs, finding that the building lease was a capital lease, and that Exelis could only include building depreciation in its indirect cost pool rather than the

entire lease cost (*id.* at 81). Following submissions of additional information from Exelis, and further auditing by DCAA, in June 2015, the Defense Contract Management Agency (DCMA) contracting officer found that Exelis had improperly treated the building lease as an operating lease, rather than a capital lease, pursuant to Federal Acquisition Regulation (FAR) 31.205-11(m) (1998).[1] Based upon the purported FAR violation, DCMA determined that Exelis' accounting treatment was not in compliance with CAS 404, and asserted a government claim in the amount of $3,821,534 due to increased costs purportedly paid by the government on Exelis' contracts from 2003 through the date of the final decision.

Pending before the Board is Exelis' motion to sustain the appeal and to dismiss the government's claim for failure to state a claim upon which relief can be granted. Exelis asserts that the government cannot state a claim for a CAS 404 violation, even assuming that the government is correct that Exelis improperly accounted for the building lease. Next, Exelis argues that the final decision asserts a sum certain with regard to the purported CAS violation, but did not assert a sum certain with regard to the purported FAR violation, and; therefore, once the CAS claim is dismissed, the Board must dismiss the government's claim in its entirety for failure to assert a sum certain. The DCMA opposes Exelis' motion. We grant Exelis' motion in part and deny the motion in part. Even if the government is correct that Exelis' accounting for the building lease is in violation of the FAR, we hold that the government cannot establish a CAS violation. However, we hold that the FAR violation and the CAS violation rely upon the same operative facts and therefore that the government is asserting the "same claim" for purposes of the Contract Disputes Act (CDA) and deny Exelis' motion to dismiss the government's claim for failure to assert a sum certain.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Exelis, through a predecessor in interest, leased the Summit Park Building in Fort Wayne, Indiana, in 1997 (compl. ¶ 6, answer ¶ 6).

2. Pursuant to Generally Accepted Accounting Principles (GAAP), Exelis had to characterize the lease as either an operating lease or a capital lease for financial accounting purposes. Pursuant to Statement of Financial Accounting Standards (FAS) No. 13, Accounting for Leases (Nov. 1976), a lease must be treated as a capital lease if any one of four tests is satisfied: (1) the lease transfers ownership of the property to the lessee by the end of the lease term; (2) the lease contains a purchase option; (3) the lease term is equal to 75 percent or more of the estimated economic life of the leased property; or (4) the present value, at the beginning of the lease, of the minimum lease payments, subject to certain adjustments, equals or exceeds 90 percent of the fair market value of the property, again subject to certain adjustments. FAS No. 13, ¶ 7.

---

[1] FAR 31.205-11(m) has been revised and reworded and is now codified at 31.205-11(h). The changes are not relevant to the resolution of this motion.

2

3. Exelis accumulated and reported its lease costs for the Summit Park Building as an operating lease (compl. ¶ 8, answer ¶ 8).

4. FAR 31.205-11(m) (1998) provides that:

> 48 CFR 9904.404, Capitalization of Tangible Assets, applies to assets acquired by a "capital lease" as defined in Statement of Financial Accounting Standard No. 13 (FAS-13), Accounting for Leases, issued by the Financial Accounting Standards Board (FASB). Compliance with 48 CFR 9904.404 and FAS-13 requires that such leased assets (capital leases) be treated as purchased assets; i.e., be capitalized and the capitalized value of such assets be distributed over their useful lives as depreciation charges, or over the leased life as amortization charges as appropriate. Assets whose leases are classified as capital leases under FAS-13 are subject to the requirements of 31.205-11 while assets acquired under leases classified as operating leases are subject to the requirements on rental costs in 31.205-36. The standards of financial accounting and reporting prescribed by FAS-13 are incorporated into this principle and shall govern its application, except as provided in subparagraphs (1), (2), and (3) below.

> (1) Rental costs under a sale and leaseback arrangement shall be allowable up to the amount that would have been allowed had the contractor retained title to the property.

> (2) Capital leases, as defined in FAS-13, for all real and personal property, between any related parties are subject to the requirements of this subparagraph 31.205-11(m). If it is determined that the terms of the lease have been significantly affected by the fact that the lessee and lessor are related, depreciation charges shall not be allowed in excess of those which would have occurred if the lease contained terms consistent with those found in a lease between unrelated parties.

> (3) Assets acquired under leases that the contractor must capitalize under FAS-13 shall not be treated as purchased assets for contract purposes if the leases are covered by 31.205-36(b)-(4).

3

5. CAS 404 Capitalization of Tangible Assets, provides:

> This Standard requires that, for purposes of cost measurement, contractors establish and adhere to policies with respect to capitalization of tangible assets which satisfy criteria set forth herein. Normally, cost measurements are based on the concept of enterprise continuity; this concept implies that major asset acquisitions will be capitalized, so that the cost applicable to current and future accounting periods can be allocated to cost objectives of those periods. A capitalization policy in accordance with this Standard will facilitate measurement of costs consistently over time.

48 C.F.R. § 9904.404-20. CAS 404 further defines the term "tangible capital asset" as "an asset that has physical substance, more than minimal value, and is expected to be held by an enterprise for continued use or possession beyond the current accounting period for the service it yields." 48 C.F.R. § 9904.404-30(a)(4).

6. Preamble A to CAS 404 provides in part:

> (7) *Accounting for assets acquired by lease.* Many commentators suggested to the Board various methods of accounting for assets acquired by lease. This problem is not a new one. Tangible assets can be acquired by various kinds of business transactions and relationships. The accounting principles related to capitalization are most readily applied in connection with purchases. Some lease agreements provide to the user of an asset many of the attributes of ownership. The accounting profession has long been cognizant of difficulties related to determining when assets acquired by lease should be treated as purchases.
>
> The Board agrees that assets actually purchased should (if otherwise appropriate for capitalization) be capitalized even when the purchase transaction is in the form of a lease agreement.
>
> This same determination must be made for other accounting purposes. The accounting profession is now guided, in this regard, primarily by opinions of the Accounting Principles Board; it is our understanding that the Financial Accounting Standards Board will soon undertake to provide a new statement for the profession on this issue. This Board will carefully consider all authoritative statements of accounting principles to the extent that it can do so while

4

maintaining progress toward its own primary goal of increased uniformity and consistency in cost accounting for contracts.

Those lease acquisitions which are treated as purchases will be subject to this standard; those which are treated as leases will for the time being be subject to the existing procurement regulations which deal with rental costs. The Board is, therefore, willing that the contractor determine, for each acquisition, whether it is a purchase and hence subject to this capitalization policy (which must comply with the criteria established in this Standard) or a rental transaction and hence subject to established regulations on rental costs. In either case, determination of the reasonableness of the lease costs remains the responsibility of the procurement agencies and is not dealt with here by the Cost Accounting Standards Board.

Cost Accounting Standards Guide, Regulation, Cost Accounting Standards Board, Preamble A, 38 Fed. Reg. 5318-19 (Feb. 27, 1973).

7. In a final decision dated 3 June 2015, the DCMA divisional administrative contracting officer, Lisa Lunceford, asserted a government claim for $3,821,534 against Exelis (R4, tab 11). The final decision found that Exelis improperly accounted for the Summit Park Building lease as an operating lease when it should have been treated as a capital lease because the present value of the lease payments, at the inception of the lease, was greater than 90 percent of the fair market value of the building. The final decision determined that Exelis was non-compliant with CAS 404 and FAR 31.205-11(h). The final decision determined that, due to the finding of CAS non-compliance, the government paid increased costs of $3,015,813 from calendar year 2003 through the date of the final decision, and that the government was entitled to $805,721.34 in compound interest. The final decision attributed $2,586,354 of the $3,015,813 in increased costs to Exelis' firm-fixed-price contracts. (*Id.*)

8. Exelis timely appealed to the Board from the final decision.

## DECISION

I.     Standard of Review

The Board will grant a motion to dismiss for failure to state a claim when the complaint fails to allege facts "'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *American General Trading & Contracting WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,640. The allegation "must be enough to raise a right to relief above the speculative level." *Cary*, 552 F.3d at 1376. In addition, the "complaint must contain sufficient factual matter,

5

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

II.   The Final Decision does Not Assert a CAS Violation upon which Relief may be Granted

Exelis asks the Board to sustain its appeal and dismiss the government's claim for failure to state a claim upon which relief may be granted. According to Exelis, even assuming all facts in favor of the government, at most the government could establish that Exelis was non-complaint with the FAR, and cannot state a claim for a CAS violation. Exelis asserts that CAS 404, by its terms applies only to "tangible capital assets" and does not apply to a lease because a lease is an intangible asset. Exelis additionally argues that the regulatory history of CAS 404 demonstrates that it does not apply to a contractor's characterization of lease, and that, at most, the mischaracterization of a capital lease as an operating lease would create a FAR allowability issue. The government, in opposing Exelis' motion, argues that, properly interpreted, CAS 404 applies to Exelis' lease.

A. The Plain Language of CAS 404

Interpretation of the CAS is an issue of law. *Rumsfeld v. United Technologies Corp.*, 315 F.3d 1361, 1369 (Fed. Cir. 2003). We interpret regulations, such as the CAS, the same way statutes are interpreted. *See, e.g., General Dynamics Corp.*, ASBCA No. 31359, 92-1 BCA ¶ 24,698 at 123,255. By its terms, CAS 404 applies to "Tangible Assets" (SOF ¶ 5). The CAS defines "tangible capital asset[s]" as "asset[s] that [have] physical substance, more than minimal value, and [are] expected to be held by an enterprise for continued use or possession beyond the current accounting period for the services it yields" (*id.*). Thus, the plain language of the CAS provides that CAS 404 applies to tangible assets which are assets with physical substance. A lease is an "intangible" rather than a tangible asset because the lease itself is a legal right to use and occupy the building and does not have "physical substance." *See, e.g., Richard S. Miller & Sons, Inc. v. United States,* 210 Ct. Cl. 431, 450 (1976) (defining goodwill as the aggregate of intangible assets of a business, including leases). This interpretation is consistent with FAS 141 which provides that leases are "contract based intangible assets." Statement of Financial Accounting Standards No. 141, Business Combinations ¶ A.14(d) (June 2001); Statement of Financial Accounting Standards No. 141, Revised 2007, Business Combinations ¶ A.46(c) (Dec. 2007). In interpreting the CAS, accounting terms are construed consistent with accounting standards. *See, e.g., BAE Sys. Information & Electronic Systems Integration, Inc.*, ASBCA No. 44832, 01-2 BCA ¶ 31,495 at 155,523 (interpreting "purchase method of accounting" and "business

6

combinations" consistent with Accounting Principles Bulletin Number 16 because they are "terms of art" or "technical terms").

The government argues unconvincingly that the plain language of CAS 404 supports requiring Exelis to treat the Summit Park Building lease as a capital lease. According to the government, permitting Exelis to treat the building lease as an operating lease would be contrary to the purpose of CAS 404 and the fundamental requirements of CAS 404-40. The government asserts that the purpose of CAS 404 is that "major asset acquisitions will be capitalized" (gov't opp'n at 3 (quoting CAS 404-20)), and that the "Fundamental requirement" provision of the standard provides that "[t]he acquisition cost of tangible capital assets shall be capitalized" (*id.* (quoting CAS 404-40(a))). The government asserts that the building has "physical substance," is of more than minimal value, and is expected to be held for "continued use" and thus, the lease is subject to CAS 404 so long as the lease is an acquisition (*id.*). The government then interprets the word "acquisition" in isolation in an attempt to demonstrate that Exelis acquired the Summit Park Building by means of the lease (*id.* at 3-4).

We interpret CAS 404 based upon its plain language. *See, e.g., Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed. Cir. 1988). In addition, we read the regulation as a whole, attempting to "fit, if possible, all parts into an harmonious whole." *Nielson v. Shinseki*, 607 F.3d 802, 807 (Fed. Cir. 2010) (quoting *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)). Here, the government's interpretation of individual words in isolation would create a nonsensical interpretation of the regulation as a whole. As noted above, the lease itself is an intangible asset and itself does not have "physical substance." *Richard S. Miller*, 210 Ct. Cl. at 450. The building has "physical substance" but Exelis has not acquired the building, it has an intangible right to use and occupy the building. Moreover, the government's proposed interpretation does not recognize a distinction between capital leases and operating leases. Thus, if the government's interpretation were correct, contractors would need to capitalize all long-term leases, including not only building leases, but also leases of vehicles, and equipment.

B. The Preamble To CAS 404

Because the plain language of CAS 404 is clear, we do not need to look to the legislative history of the standard. *See, e.g., Snyder v. Nicholson*, 489 F.3d 1213, 1217 (Fed. Cir. 2007). However, we note that the preamble to CAS 404 provides that the CAS Board is "willing that the contractor determine, for each acquisition, whether it is a purchase and hence subject to this capitalization policy (which must comply with the criteria established in this Standard) or a rental transaction and hence subject to established regulations on rental costs" (SOF ¶ 6). The CAS Board's interpretation, as stated in the preamble, is entitled to deference. *Perry v. Martin Marietta Corp.*, 47 F.3d 1134, 1138 (Fed. Cir. 1995). Thus, even if the language of CAS 404 were not clear, the appropriate interpretative aid, the preamble, confirms that the CAS Board intended to allow the contractor to determine whether a lease should be treated as a capital lease or an operating

7

lease, and that CAS 404 would only apply in the event that the contractor elected to treat the lease as a capital lease. Thus, the CAS Board clearly did not intend that all leases be considered "tangible capital assets."

## C. Other Interpretative Aids

The government asserts that the proper interpretation of CAS 404 is found in the 1992 "Statement of Objective, Policies and Concepts." According to the government, the statement provides that "uniformity" and "consistency" are primary objectives of the CAS Board. (Gov't opp'n at 5-6) We first note that the 1992 statement was issued by a different CAS Board than the CAS Board that issued CAS 404.[2] The statement of intent of the new CAS Board is not conclusive of the intent of the old CAS Board. *See General Motors Corp. v. United States*, 78 Fed. Cl. 336, 347 (2007). However, the original CAS Board issued its own "Restatement of Objectives, Policies and Concepts" in May 1977. *Reprinted in Cost Accounting Standards Guide* (CCH) ¶ 2915 (1998). The wording of the two policy statements differ slightly, but the difference is not material for the purpose of resolving this motion.

The specific language in the preamble to CAS 404, providing that the CAS Board is "willing that the contractor determine, for each acquisition, whether it is a purchase and hence subject to this capitalization policy (which must comply with the criteria established in this Standard) or a rental transaction and hence subject to established regulations on rental costs" (SOF ¶ 6), is more useful in interpreting the standard than the government's citation to general policies of uniformity and consistence. Significantly, the preamble to CAS 404 recognized its primary "goal of increased uniformity and consistency in cost accounting for contracts," immediately before stating that "[t]hose lease acquisitions which are treated as purchases will be subject to this standard; those which are treated as leases will for the time being be subject to the existing procurement regulations which deal with rental costs." Thus the CAS Board recognized that uniformity and consistency could be addressed through the standard, but elected not to do so, stating that "determination of the reasonableness of the lease costs remains the responsibility of the procurement agencies and is not dealt with here by the Cost Accounting Standards Board." (SOF ¶ 6)

The government additionally argues that Exelis misinterprets the preamble to CAS 404, and that the preamble actually stands for the proposition that the contractor must

---

[2] The original CAS Board was established in 1970 as an agency of Congress. Defense Production Act – Amendments – Economic Stabilization, Pub. L. No. 91-379, 1970 U.S.C.C.A.N. (84 Stat.) 937. After the original CAS Board went out of existence in 1980, a new CAS Board was established in 1988 as an Executive Branch agency in the Office of Management and Budget. Office of Federal Procurement Policy Act Amendments of 1988, Pub. L. No. 100-679, 1988 U.S.C.C.A.N. (102 Stat.) 4055.

account for leases in the same manner as the assets would be accounted for pursuant to financial accounting under GAAP (gov't opp'n at 6-8). The government also asserts that its interpretation is supported by the hierarchy for interpretation of CAS standards (*id.* at 10) because it is using the GAAP to fill-in a gap where the CAS is silent. Once again, we note that the plain language of the CAS is clear, and that it is not necessary to fill-in any gaps. However, to the extent there is a gap, the government incorrectly attempts to use a GAAP provision to control the CAS when the hierarchy for interpretation of CAS standards provides that the CAS controls.

As the government notes in its opposition, there is a recognized hierarchy for interpretation of CAS provisions which places the CAS Board's standards, rules, and regulations at the top, followed by the FAR and agency FAR supplements, and then GAAP. *United Technologies*, 315 F.3d at 1373. Here the CAS with its rules and regulations, including the contemporaneous preamble, provides that the contractor can select whether to treat the lease as a capital lease or an operating lease. These sources are at the top of the hierarchy. The government seeks to use GAAP, the lowest level of the hierarchy, to interpret the top level of the hierarchy because of a purported "gap."

This CAS hierarchy means that the CAS concerns the measurement, assignment, and allocation of costs. However, the FAR, and not the CAS, determines the allowability of the costs. Thus, the fact that an accounting practice is CAS-compliant does not mean that the costs are allowable pursuant to the FAR and the fact that costs are unallowable does not mean that an accounting practice violates the CAS. If a contractor improperly accounts for a capital lease as an operating lease, this creates an allowability problem, in violation of the FAR, and not a CAS problem. "The rule is that any capital lease costs in excess of the prescribed depreciation charges are unallowable." DARRELL J. OYER, ACCOUNTING FOR GOVERNMENT CONTRACTS--COST ACCOUNTING STANDARDS 13-21 (Matthew Bender ed., 2009). In sum, even if we were to consider legislative histories or other interpretative aids in construing CAS 404, it would not change our determination that the government cannot establish a CAS 404 violation.

III.    The Government's Claim for Violation of the FAR

Having determined that the final decision fails to state a CAS claim upon which relief may be granted, we turn to Exelis' request that the appeal be sustained in its entirety because the government failed to assert a sum certain in the final decision for a potential FAR violation. We deny this part of Exelis' motion because we find that the government could assert facts sufficient to establish entitlement to relief because the FAR claim is based upon the same facts as the CAS claim and thus constitutes the same claim for CDA purposes. We note that Exelis filed a motion to dismiss, and not a motion for summary judgment, and neither party has supported their briefs with declarations or additional documentation.

9

The Board has recognized that "[n]ew theories or new damages arising from the same operative facts are not new claims." *Contel Advanced Systems, Inc.*, ASBCA No. 50648 *et al.*, 03-2 BCA ¶ 32,277 at 159,696. Moreover, "[t]he test for what constitutes a 'new' claim is whether 'claims are based on a common or related set of operative facts.'" *Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.*, 10-1 BCA ¶ 34,340 at 169,591 (quoting *Placeway Construction Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990)). Here, the final decision asserted that Exelis violated FAR 31.205-11(h) and that the FAR violation constituted a violation of CAS 404. The relevant facts to determining either the FAR or the CAS claim include the terms of the lease for the Summit Park Building, Exelis' cost of borrowing, and the market value of the building. Thus, the FAR and the CAS claims involve the same operative facts and are the same claim for CDA purposes.

Exelis asserts that the Board lacks jurisdiction because the final decision asserts a sum certain calculated based on a CAS violation, and did not assert a separate sum certain based upon a FAR violation. Unlike a CAS 404 violation, disallowed costs pursuant to a FAR violation would not entitle the government to an adjustment of fixed-price contracts. *Compare* 48 C.F.R. § 9903.306(b) (providing for the calculation of increased costs on fixed-price contracts for CAS violations) *with* FAR 16.202-1 (firm-fixed-price contracts are not adjustable based on contractor's cost experience). Exelis asserts, and the government admits, that $2,586,354 of the $3,015,813 in claimed increased costs pertain to fixed-price contracts (SOF ¶ 7; compl. ¶ 49, answer ¶ 49). Thus, the sum certain involved in a FAR violation likely would be smaller than with a CAS violation.

The sum certain requirement simply requires that a contractor, or the government in the case of a government claim, specify a dollar amount for the claim. "The Board has repeatedly held that use of estimated or approximate costs in determining the value of a claim is permissible so long as the total overall demand is for a sum certain." *Government Services Corp.*, ASBCA No. 60367, 16-1 BCA ¶ 36,411 at 177,537. The lack of a sum certain deprives the contracting officer, or in this case the contractor, of the opportunity of meaningful consideration of the claim. *Eaton Contract Services, Inc.*, ASBCA No. 52888 *et al.*, 02-2 BCA ¶ 32,023 at 158,267 (citing *Metric Constr. Co. v. United States*, 14 Cl. Ct. 177, 179 (1988)). Additionally, it is well recognized that a claim can be amended to increase the asserted claim amount without requiring a new claim. *See, e.g., Tecom, Inc. v. United States*, 732 F.2d 935, 937-38 (Fed. Cir. 1984). Thus, the fact that the government's sum certain was apparently calculated based on a purported CAS violation, rather than on the basis of a purported FAR violation, does not render the claim improper because the purported CAS and FAR violations are the same claim for CDA purposes. Moreover, it would make little sense to permit a claim to be increased without requiring submission of a new claim, but to create a new rule requiring a new final decision in the event that the amount in dispute decreases. Because we hold that the final decision satisfies the sum certain requirement, we do not reach the government's alternative argument that the final decision is an interpretation of a contract term.

10

## CONCLUSION

For the reasons stated above, we grant Exelis' motion in part, holding that the government fails to state a claim upon which relief may be granted regarding a purported violation of CAS 404, but deny Exelis' motion to sustain the appeal in its entirety because we find that the final decision states a sum certain with regard to a FAR violation.

Dated: 29 August 2016

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60131, Appeal of Exelis, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals