NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HEALTHESTATE, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, ASM RESEARCH, LLC,**
*Defendants-Appellees*

---

2024-1336

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00034-KCD, Judge Kathryn C. Davis.

---

Decided:  March 20, 2026

---

BRYANT STEVEN BANES, Neel, Hooper & Banes, P.C., Houston, TX, argued for plaintiff-appellant.

JENNA ELIZABETH MUNNELLY, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States.  Also represented by SCOTT DAVID BOLDEN, BRIAN M. BOYNTON.

RANGANATH SUDARSHAN, Covington & Burling LLP, Washington, DC, argued for defendant-appellee ASM

Research, LLC.    Also represented by TAREK AUSTIN,
BROOKE STANLEY; YURIJ MELNYK, San Francisco, CA.

————————————

Before DYK, REYNA, and STOLL, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant HEALTHeSTATE, LLC sued the United
States for breach of contract and copyright infringement in
the U.S. Court of Federal Claims. ASM Research, an entity
that subcontracted with HEALTHeSTATE to develop soft-
ware for the government, joined the litigation as an inter-
ested party. The government and ASM Research moved for
summary judgment on HEALTHeSTATE's claims, and the
Claims Court granted their motions. We affirm.

BACKGROUND

I.

HEALTHeSTATE ("HeS") develops digital healthcare
systems for government and commercial clients. Between
2006 and 2011, the government awarded HeS with a series
of contracts to adapt the government's healthcare software
HEALTHeFORCES for civilian use. From 2006–2011, HeS
released versions of the adapted software under the name
"HEALTHeSTATE." J.A. 8836–37.

In 2010, HeS sent a letter to the U.S. Army's Contract-
ing Division indicating that HeS "inadvertently did not as-
sert any restricted rights to the software that is being
modified" under its contract with the government, despite
having infused "$500,000 in private funds" in 2007 and de-
veloping "segregable portions of the software entirely at
private expense." J.A. 471. HeS informed the contracting
division that in accordance with the Defense Federal Ac-
quisition Regulation Supplement, it was asserting "Re-
stricted Rights" for the software modules created
exclusively with private funds. *Id.* The following year, HeS

released the baseline software at issue: HEALTHeSTATE Build 252.

Independent of HeS, ASM Research contracted with the government in 2008 to develop a veterinary services program. In 2012, ASM Research hired HeS as a subcontractor to help with the project. In addition to assisting in development, HeS would provide its HEALTHeSTATE Build 252 as the new veterinary services program's foundation. HeS and ASM Research together developed a Remote Online Veterinary Record ("ROVR") program that enabled Army veterinarians to maintain treatment records for government-owned animals. The subcontract between ASM Research and HeS specified that HeS would continue to have sole ownership to the HEALTHeSTATE "baseline software." J.A. 14454.

On May 27, 2014, shortly after its subcontract with HeS expired, ASM Research delivered the ROVR source code to the government with Government Purpose Rights.[1] The government subsequently awarded ASM Research with a sole source contract for continued maintenance and technical support of ROVR.

In October 2014, HeS sent a letter to the government asserting ownership of the "Proprietary Source Code for HEALTHeSTATE and ROVR" delivered to the government by ASM Research. J.A. 735. HeS sent a more detailed

---

[1] Government Purpose Rights provide the government the rights to "(i) [u]se, modify, reproduce, release, perform, display, or disclose technical data within the [g]overnment without restriction; and (ii) [r]elease or disclose technical data outside the [g]overnment and authorize persons to whom release or disclosure has been made to use, modify, reproduce, release, perform, display, or disclose that data for United States [g]overnment purposes." DFARS 252.227-7013(a).

letter in November 2014 describing its relationship with ASM Research and the entities' mutual work on ROVR.

The government responded with a request for more information from both HeS and ASM Research regarding the ownership of the ROVR source code. In its response dated February 9, 2015, HeS requested the government "(1) terminate [ASM Research's] sole source award immediately and make [the] award to HeS as the rightful owner of the code, and (2) compensate HeS for the use of its code from 7 May 2014 forward." J.A. 716. The government never responded.

## II.

In January 2018, HeS filed suit in the U.S. Court of Federal Claims ("Claims Court"), alleging the government infringed its copyright for the HEALTHeSTATE and ROVR software. The government filed a motion to dismiss, arguing that HeS failed to comply with the copyright registration requirement under 17 U.S.C. § 411(a), which would require that HeS allege it had applied for, registered, or was denied registration of its asserted copyright. J.A. 3142–43. HeS subsequently applied for and received two copyright registrations for computer programs, one for HEALTHeSTATE and one for ROVR. *See* Registration Nos. TX-8-498-425 and TX-8-498-391.

HeS then filed an amended complaint adding a claim for breach of an express or implied-in-fact contract under the Tucker Act. J.A. 2619 (alleging this court's jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) and 41 U.S.C. § 7103(f)(5)). HeS referred to several agreements in the Factual Allegations section of its amended complaint. *See* J.A. 2620 (recounting HeS's assertion of restricted rights "as allowed by Contract No. W911QY-09-C-0128"); J.A. 2621 (describing HeS's "subcontract agreement" with ASM Research); J.A. 2622 (relaying how HeS and ASM Research "entered into Modification No. 1 to the subcontract"). In its Count No. 1 for breach of contract, HeS

broadly pled breach without identifying a specific contract, alleging "HeS has submitted a proper claim to the government for breach of contract, actual or implied in fact." J.A. 2625.

ASM Research joined the litigation as a third-party defendant at the government's request. Following the close of fact and expert discovery, the parties cross-moved for summary judgment on the breach of contract claim. Throughout its summary judgment briefing, HeS relied solely on an End-User License Agreement ("EULA") contained in the ROVR software as the contract allegedly breached by the government. *See* J.A. 371–73. But during oral argument, HeS referenced Contract No. W911QY-09-C-0128, which was awarded by the government to HeS in 2009 (the "0128 Contract"). J.A. 2497. The court asked whether HeS was changing its representation made during discovery that the contract at issue is the EULA, to which HeS responded "No, Your Honor." J.A. 2498. The court pointed out that in HeS's summary judgment briefing, HeS's express contract argument was limited to the EULA. J.A. 2502. When asked whether HeS had addressed the 0128 Contract in its summary judgment briefing, HeS stated, "it's in our pleadings," but then asserted the EULA as the operative contract at issue. J.A. 2502–03 ("[T]he EULA controls at that point."). Consequently, the Claims Court addressed only the EULA in its decision for summary judgment on the breach of contract claim. *See* J.A. 154–70. The court granted summary judgment in favor of the government and ASM Research, finding that HeS failed to establish that it was owed a "sum certain," and, in the alternative, failed to establish that a government agent with actual authority agreed to the EULA. *Id.*

The copyright claim proceeded on a separate timeline. Prior to moving for summary judgment, the government and ASM Research requested that the Claims Court refer questions to the Register of Copyrights regarding alleged inaccuracies in HeS's applications for copyright

registration.  ASM Research asserted that HeS provided four types of knowingly inaccurate information in its applications for copyright registration.  For each application, ASM Research alleged that (1) the software was not first published on the date indicated, (2) the software was not completed on the date indicated, (3) the software was derived from undisclosed works, and (4) the source code submitted as the deposit copy included material added after the date of first publication and had been altered to remove third-party copyright notices.  J.A. 13.

In response, HeS argued that "inaccurate information (if any) was not submitted as *knowingly* inaccurate." J.A. 93.  After finding that ASM Research had sufficiently alleged that the inaccuracies in the copyright applications were known to HeS, the court inquired of the Register whether it would have rejected HeS's applications had it been aware about the alleged inaccuracies.  The Register confirmed that if the Copyright Office had been aware of the alleged inaccuracies, it would have refused registration.  J.A. 28351–52.  HeS subsequently moved for summary judgment on its copyright infringement claim.  ASM Research and the government cross-moved for summary judgment limited to the question of whether HeS's copyright registrations were valid.  ASM Research and the government also filed a *Daubert* motion to exclude opinions of HeS's expert, Dr. Hassell.  The Claims Court granted the government and ASM Research's motions for summary judgement on copyright infringement.  The court found that HeS's copyright registrations were invalid because HeS knowingly submitted inaccurate deposit copies and the Register would have refused registration had it been aware of the inaccuracies.  The Claims Court granted the motion to exclude HeS's expert and entered summary judgement on the alternative ground that HeS could not make a prima facie claim of copyright infringement without Dr. Hassell's testimony.

HeS appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

On appeal, HeS challenges the Claims Court's grant of summary judgment on both the breach of contract and copyright infringement claims.  HeS asserts that the government exceeded its limited license to use HEALTHeSTATE Build 252, constituting breach of contract.  HeS also contends that its claim complied with the requirements of the Contract Disputes Act because it included "a sum certain reducible to a simple mathematical calculation as the law contemplates."  Appellant Br. 29 (citation modified).

Regarding copyright, HeS argues that the Claims Court improperly imputed to HeS's CEO, Barry Greene, knowledge or willful blindness regarding inaccuracies in HeS's copyright registration applications.  HeS also argues that the Claims Court erred in excluding the testimony of its expert.

We review a grant of summary judgment by the Claims Court de novo.  *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Rules of the Court of Federal Claims.

## I. Contract Disputes Act

As a preliminary matter, we address HeS's purported claim under the Contract Disputes Act ("CDA") (41 U.S.C. §§ 7101–7109).  The CDA does not define the elements of a claim, so this court looks to the Federal Acquisition Regulation ("FAR") for guidance.  *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1372 (Fed. Cir. 2023).  The FAR defines a claim as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the *payment of money in a sum certain*, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

FAR 2.101 (emphasis added).

This court addressed the sum certain requirement in *Contract Cleaning*, stating that "[a]ll that is required is that the contractor submit in writing *to the contracting officer a clear and unequivocal statement* that gives the contracting officer adequate notice of the basis and *amount of the claim*." *Contr. Cleaning Maint., Inc. v. United States,* 811 F.2d 586, 592 (Fed. Cir. 1987) (emphasis added).

The Claims Court found that HeS failed to provide its contracting officer with a sum certain. We agree.

HeS asserts four different methods of calculating a sum certain, each resulting in a different dollar amount: (1) "at least $500,000 per pop on contract plus exclusive development" (J.A. 1145–46); (2) 25% to 50% of the value of contracts awarded to ASM Research for ROVR work (J.A. 405–06); (3) 25% of the value of contracts awarded to ASM Research for ROVR work (J.A. 2509–10); and (4) "at least" 25% of the value of contracts awarded to ASM Research for new ROVR work, plus an annual maintenance fee of $372,500 (J.A. 2403).

HeS's inability to identify the specific amount of the claim foretells a failure to present a clear and unequivocal sum certain. The purpose of a sum certain is to enable a contracting officer to settle a claim with finality. *See Metric Constr. Co., Inc. v. United States*, 14 Cl. Ct. 177, 179 (1988). "When, however, no specific amount or an open-ended amount is sought, the contracting officer cannot settle the case by awarding the contractor the amount sought." *Id.*; *see also Exec. Ct. Reps., Inc. v. United States*, 29 Fed. Cl. 769, 775 (1993) (noting that "when the contractor fails to

specify a sum certain . . . the contracting officer cannot finally settle a case by simply awarding a specific amount of money, because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer").

On appeal, HeS contends that its February 9, 2015 letter to the government contained "all that is necessary to constitute a proper claim." Appellant Br. 23. We disagree. HeS's letter requested that the government "compensate HeS for the use of its code from 7 May 2014 forward." J.A. 716. Arguing that its sum certain "was reducible to a simple mathematical calculation of the 25% minimum of the 'new ROVR Work,'" HeS relies on one of 19 exhibits included with the letter. J.A. 160. The exhibit, a modification to the ROVR subcontract between HeS and ASM Research, indicates that ASM Research will pay HeS a minimum of 25% to a maximum of up to 50% for any new work awarded by the government. J.A. 723. HeS argues that the government could have calculated its sum certain as 25% of the amount paid to ASM Research for the "new ROVR work." Appellant Br. 26–27 (citing J.A. 723).

HeS's calculations based on the exhibit to the February 9, 2015 letter lack specificity. Even assuming a contracting officer were able to locate the specific paragraph of the particular exhibit to the letter, the contracting officer would not know whether any amount shy of the 50% maximum would be sufficient to put HeS's claim to rest. HeS cites "25%" without explaining why the contracting officer would not choose "50%." *See* Appellant Br. 27 ("To get this number, all the Government had to do was multiply 25% times the value of the contracts awarded to ASMR requiring the use of the ROVR Code."). We agree with the Claims Court that in view of the 25%–50% range, a contracting officer could not "finally settle [the] case by simply awarding a specific amount of money." *Exec. Ct. Reps.*, 29 Fed. Cl. at 775.

HeS's varied calculations and open-ended amounts fall short of "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contr. Cleaning,* 811 F.2d at 592. Its claim was therefore inadequate under the CDA and fails as a matter of law. *ECC,* 79 F.4th at 1380 ("A claim that does not state a sum certain has not sufficiently pleaded the elements of a claim under the CDA and may be denied by the contracting officer and dismissed on appeal to the boards or Court of Federal Claims for failure to state a claim."). We find no error in the Claims Court decision granting appellees' motions for summary judgment for failure to state a sum certain.

## II.  Breach of Contract

HeS argued before the Claims Court that the EULA "sets forth the commercial license terms by which the Government is bound." J.A. 371. HeS characterized the EULA as an express contract, or, alternatively, an implied-in-fact contract. J.A. 374 n.11. We are not persuaded.

To recover for breach of contract, a party must allege and establish four elements: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). To establish an express or implied-in-fact contract with the government, a plaintiff must show (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

There is no genuine dispute of material fact that although the EULA was present in the ROVR code, it was "hidden" and the code was specifically modified to not display the EULA to users. J.A. 366. A development manager for ASM Research testified that although the software

contained a EULA, "the ROVR program [was] configured to not display the EULA to users." J.A. 7908; *see also* J.A. 7952 ("Q: Is the EULA shown to users or anybody at the Department of Defense today? A: Not for the ROVR application."). A former HeS lead engineer testified that the ROVR software was installed on Pentagon servers in 2013, but she did not remember whether the EULA was displayed or not. J.A. 1073, 1074. Indeed, HeS proffered no evidence showing that the EULA was displayed. Thus, because it is undisputed that no one with authority to bind the government even saw the EULA, HeS has failed to meet its burden of establishing that it formed a valid contract with a government official with authority to bind the government. *Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006) (affirming grant of summary judgment where plaintiff failed to produce evidence that a government representative with contracting authority made a contract with plaintiff). Thus, HeS fails to establish the first element of the breach of contract allegation: the existence of a valid contract. *San Carlos*, 877 F.2d at 959; *see also D & N Bank v. United States,* 331 F.3d 1374, 1381–82 (Fed. Cir. 2003) (affirming summary judgment of no contract liability where plaintiff "attempt[ed] to forgo the initial step for proving a breach of contract claim (namely, proving that a contract existed)"); *1st Home Liquidating Tr. v. United States*, 581 F.3d 1350, 1358 (Fed. Cir. 2009) ("[N]o contract was formed, and thus, there was no breach."). Consequently, the Claims Court properly granted summary judgment of no breach of contract.

On appeal, HeS asserts the 0128 Contract as the agreement breached by the government. *See* Appellant Br. 16. But HeS waived any argument that the government breached the 0128 Contract. *See Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002).

Before the Claims Court, HeS asserted that the EULA was the contract breached by the government. J.A. 8180,

8186; J.A. 8107 (HeS's corporate representative confirming sole reliance on the EULA ("Q: Am I understanding correctly that the HEALTHeSTATE, LLC, software [E]ULA is the contract that HEALTHeSTATE is alleging is breached in this litigation? A: Yes. Q: HEALTHeSTATE is not claiming a breach of any other contract other than the [E]ULA. Correct? A: I don't believe so.")); J.A. 351–406, 17343–67 (arguing breach of contract in two summary judgment briefs with no mention of the 0128 Contract).

HeS cannot now raise for the first time on appeal a new breach of contract theory not raised before the Claims Court. "It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120 (1976). *See also Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1576 (Fed. Cir. 1991) ("[A]bsent exceptional circumstances, a party cannot raise on appeal legal issues not raised and considered in the trial forum."); *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1175 (Fed. Cir. 2019) (holding that appellant's arguments "are raised for the first time on appeal and are therefore waived"). Exceptional circumstances are not present in this case. We conclude that HeS's arguments concerning breach of the 0128 Contract have been waived.

### III.  Copyright Infringement

HeS argues that the Claims Court erred in granting summary judgment that its copyright registrations are not valid as a matter of law. Specifically, HeS argues that it did not know that its applications for copyright registration contained inaccurate information. HeS contends that any inaccuracies in its copyright applications were immaterial. We disagree.

The Copyright Act requires copyright holders to register their works before suing for copyright infringement. 17 U.S.C. § 411(a). To obtain registration, the author of a work must deposit with the Register of Copyrights a copy of the work and an application. *Unicolors, Inc. v. H&M*

*Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022) (citing 17 U.S.C. §§ 408, 409).  In the case of computer programs, the Copyright Office provides that "the applicant should submit 'one copy of identifying portions' for the specific version of the program that the applicant intends to register." U.S. Copyright Office, *The Compendium of U.S. Copyright Office Practices* § 1509.1(C) (3d ed. 2017) ("Compendium") (quoting 37 C.F.R. § 202.20(c)(2)(vii)).  Once the Register determines, inter alia, that the deposited material constitutes copyrightable subject matter, the Register issues to the applicant a certificate of registration.  17 U.S.C. § 410(a).

Section 411 of the Copyright statue provides that a certificate of registration satisfies a potential plaintiff's registration requirement *"regardless of whether the certificate contains any inaccurate information, unless"*:

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1) (emphasis added).

We first consider whether the Claims Court erred in its conclusion that HeS's applications for copyright registration included inaccurate information.  Appellees' expert, Dr. Martin Walker, testified that HeS's deposit copies do not match the source code as it existed in the years claimed by HeS in its copyright applications: 2006 for ROVR and 2013 for HEALTHeSTATE.  Dr. Walker indicated that the ROVR deposit copy contains files that were added or revised after 2006, including in 2010, 2011, and 2013. J.A. 9103–05.  Regarding HEALTHeSTATE, Dr. Walker found the deposit copy contains occurrences of code added or revised in 2015 and 2017, several years after the 2013

completion date represented by HEALTHeSTATE. J.A. 9105–06.  Dr. Walker also identified numerous instances where source code in the deposit copies had been altered to delete or change references to third parties as authors or copyright holders.  J.A. 9108–10.

In response, HeS filed a declaration by its CEO, Barry Greene, who submitted the deposit copies.  Mr. Greene conceded that "[i]t is entirely possible that the working servers (by 2018) from which code was pulled contained newer date information the servers had written, or some newer patches developed to fix production bugs for our live customers."  J.A. 1275.  Mr. Greene also indicated that by 2018, HeS had "updated the code to remove instances of references to third parties no longer relevant to specific customers' needs or functional requirements."  J.A. 1278.

The Claims Court found that HeS's evidence does not rebut the findings laid out in Dr. Walker's report.  J.A. 176.  We agree.  The Claims Court correctly determined that there is no genuine issue as to any material fact on the question of whether HeS submitted inaccurate deposit copies with its registration applications.

The next step of the 17 U.S.C. § 411(b)(1) analysis requires us to consider whether the inaccuracies were known to HeS.  17 U.S.C. § 411(b)(1)(A).  In *Unicolors*, the Supreme Court recognized that "[l]ack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration," but "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law."  *Unicolors,* 595 U.S. at 182, 187.  "Willful blindness may support a finding of actual knowledge."  *Id.* at 187.

We first consider whether HeS lacked knowledge of fact, thereby excusing the inaccuracies in its copyright registrations.  The Claims Court cited Mr. Greene's testimony as establishing that HeS was aware that its deposit copies contained versions of the software that included new code

and that removed references to third parties. J.A. 180. We agree with the Claims Court that there is no genuine issue of material fact as to the question of whether Plaintiff had knowledge of the underlying facts that produced the inaccuracy in the deposit copies.

We next consider lack of knowledge of relevant copyright law. *See Unicolors*, 595 U.S. at 182 ("Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration."). In considering whether there was knowledge of the relevant legal requirements of copyright law, we review "[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters" to determine whether the applicant was actually aware of, or willfully blind to, legally inaccurate information. *Id.* at 187–88.

Here, the Claims Court found that Mr. Greene was at least willfully blind to the law. J.A. 181. HeS admits that Mr. Greene prepared the applications "in a very short time without advice or assistance from counsel." Appellant Br. 9. Mr. Greene did, however, seek guidance from the Copyright Office. Appellant Br. 8–9 (explaining that Mr. Greene "conferred with the United States Copyright Office" during preparation of HeS's applications). Moreover, the Copyright Office provides resources for pro se applicants, including an extensive Compendium. *See generally* Compendium. Regarding "Computer Programs," the Compendium states that "the applicant should submit an identifying portion of the source code for the particular version of the program that the applicant intends to register." *Id.* at § 1509.1(C). As the Claims Court noted, "[d]epositing an inaccurate copy is a significant error because the deposit copy identifies the precise copyright work for which the applicant seeks copyright registration." J.A. 184 (first citing 17 U.S.C. § 408; then citing J.A. 28350). The Claims Court concluded that based on circumstantial evidence, including the significance of the legal error and the clarity of the

requirements for deposit copies, HeS was at least willfully blind to the legally inaccurate information. J.A. 185. We agree with the Claims Court that HeS has not raised a genuine issue of fact as to the first element of Section 411(b)(1).

The parties do not dispute that the second element of Section 411(b)(1) is satisfied. The Register confirmed that if the Copyright Office had known that the copyright applications included any one of the four inaccuracies asserted by ASM Research, it would have refused registration. J.A. 28351–52. Because HeS submitted deposit copies with known inaccurate information, and the Copyright Office confirmed it would have refused registration had it known of these inaccuracies, HeS's copyright registrations are invalid. 17 U.S.C. § 411(b)(1). Without valid copyright registrations, HeS cannot legally assert copyright infringement. 17 U.S.C. § 411(a). We hold that the Claims Court appropriately granted summary judgment to appellees on HeS's copyright infringement claim. As such, we do not reach HeS's argument regarding the exclusion of its copying expert's testimony.

## CONCLUSION

We have considered HeS's remaining arguments and find them unpersuasive. For the reasons stated above, we affirm the Claims Court's grant of summary judgment on HeS's breach of contract and copyright infringement claims.

### AFFIRMED

### COSTS

Costs against HeS.